**Linda VIERECK, Plaintiff,**

v.

**CITY OF GLOUCESTER CITY and John Holman, City Administrator, Defendants.**

**Civil Action No. 96–3481(JEI).**

United States District Court, D. New Jersey.

April 11, 1997.

Weissman & Mintz by Judiann Chartier, Somerset, NJ, for Plaintiff.

Maley, Williamson, Hayden & Gmerek by M. James Maley, Jr., Cherry Hill, NJ, for Defendants.

## OPINION

IRENAS, District Judge:

Plaintiff Linda Viereck commenced this action seeking damages and equitable relief from her former employer and supervisor for their alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–54. Both parties now move the Court for summary judgment on the sole count of plaintiff's complaint. Because, as a matter of law, defendants terminated plaintiff in violation of the FMLA, the Court will deny defendants' motion for summary judgment and grant plaintiff's motion for summary judgment in part with respect to the application of plaintiff's FMLA leave. Because genuine issues of material fact remain as to plaintiffs damages and as to whether plaintiff was able to continue working upon the expiration of the leave. the Court will deny plaintiff's motion in part with respect to these issues.

## I. BACKGROUND

Defendant City of Gloucester City ("City") hired plaintiff to work as a secretary to the city administrator on January 21, 1993. Her job responsibilities included typing, filing, and similar clerical tasks. Throughout her tenure with the City, plaintiff was an exemplary employee and had a very good attendance record. *See* Plaintiff's App. at 30.

On June 30, 1994, a drunk driver struck plaintiff's automobile, injuring her neck, back, left arm, and left shoulder. Doctors at the Underwood Hospital treated these injuries on the day of the accident. The next

day, plaintiff telephoned City Mayor Walter Jost, telling him about the car accident and that she had been hospitalized, giving him a brief description of her injuries, and reporting that due to her condition she would be unable to return to work for some time. *See* Viereck Aff. ¶¶ 25–30.[1] Later that day, Mayor Jost communicated plaintiff's message to her supervisor. City Administrator John Holman.

On July 25, 1994, plaintiff informed Mayor Jost and Mr. Holman that her doctors had not given her a definite day when she could return to work. *See id.* at 33. On July 8, 1994. Dr. Lawrence Barr examined plaintiff for an orthopedic evaluation. Plaintiff submitted his report to the City on July 28, 1994, along with a note from Dr. Barry Herman indicating that plaintiff would remain unable to work for at least two more weeks:

> Please be advised the Linda Viereck is under care at this office for serious injuries resulting from a [motor vehicle accident] on [June 30, 1994]. She is obtaining medical care as well. Currently she is unable to work and would not be able to return to her job for at least [two] weeks. Enclosed is Dr. Barr's report.

*Id.* at 34. On August 17, 1994, plaintiff sent the City another note from Dr. Herman indicating that plaintiffs "serious injuries" prevented her from returning to work and that she should be out at least three additional weeks. *See id.* at 37.

On September 15, 1994, Dr. Eric Lipnack diagnosed plaintiff with cervical, dorsal, lumber sprain and strain, possible lumbar radiculopathy, trapezium myofascitis, and posttraumatic cephaglia. *See id.* at 39. Dr. Lipnack also considered plaintiff "unable to return to work until further notice." *Id.* On September 27, 1994, Dr. Lipnack reevaluated

plaintiff and again considered her unable to return to work. *See id.* at 41. On October 12, 1994, Dr. Herman tentatively scheduled plaintiff to be cleared to return to work as of the beginning of December. *See id.* at 42. On December 1, 1994, Dr. Herman wrote that plaintiff "is able to return to work as of today." *Id.* at 43. Plaintiff provided these notes and reports to the City throughout the course of her medical treatment.[2]

Plaintiff exhausted her accumulated sick leave and vacation time by August 2, 1994. On August 17, 1994, plaintiff requested a six-month leave of absence without pay which the City denied on August 30, 1994. *See id.* at 36, 44–45. On August 31, 1994, plaintiff first learned of her rights under the FMLA and requested twelve weeks of unpaid leave under that Act.[3] By letter dated September 2, 1994, the City granted plaintiff's request for leave under the FMLA. *See id.* at 47. The City, however, applied the leave retroactively dating back to the first date of her absence. Accordingly, the City directed plaintiff to return to work on September 26, 1994. On September 28, 1994, when plaintiff had not yet returned to work, the City, through Mr. Holman, fired plaintiff for excessive absenteeism. Defendants later cited the need for a permanent replacement for plaintiff's position, although they admit that they did not find such replacement until February 2, 1995. *See* Holman Cert. ¶ 4; Plaintiff's App. at 21.[4]

## II.  DISCUSSION

### A.  *Standard for Summary Judgment*

Under Federal Rule of Civil Procedure 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

1.  Plaintiff was scheduled to take a vacation day on July 1, 1994, the day after the car accident ... *See* Plaintiff's App. at 55.

2.  Defendants dispute that plaintiff sent them Dr. Herman's December 1, 1994 note. Otherwise, defendants admit that they received plaintiff's notes and medical documentation.

3.  Plaintiff learned of her rights from a local union. In contravention of 29 U.S.C. § 2619, the City had not posted FMLA notices about the

office or otherwise informed employees of their rights under the Act.

4.  At oral argument it became apparent that there was tension between plaintiff and her employer which predated her accident. This tension arose from plaintiff's claim that she was part of the bargaining unit of the City's unionized employees and from the City's belief that as secretary to one of two key management personnel she was not part of the union.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A non-moving party may not rest upon mere allegations, general denials, or vague statements in opposition to a summary judgment motion. If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292 (3d Cir.1993); *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs,* 982 F.2d 884, 890–91 (3d Cir.1992).

It is not the role of the judge at the summary judgment stage to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court must draw all inferences in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, the Court must accept the non-movant's version as true. *See Pastore v. Bell Tel. Co.,* 24 F.3d 508, 512 (3d Cir.1994).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue of material fact for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons. Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring).

B. *Family and Medical Leave Act*

■ The FMLA entitles eligible employees to twelve workweeks of leave under certain circumstances. *See* 29 U.S.C. § 2612. These include the onset of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In connection with this section, "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, or continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.114(a).

Defendants concede, as they must, that the FMLA applies to the City and to Mr. Holman individually. *See* 29 U.S.C. § 2611(4)(A) (covering political subdivisions of states and supervisors). They also concede that plaintiffs injuries constituted a serious health condition under the Act. Defendants dispute, however, the time from which plaintiffs twelve-week leave period should run. Accordingly, defendants argue that plaintiff's termination for excessive absenteeism on September 28, 1994 was proper.

29 U.S.C. § 2612(d)(2)(B) speaks generally to the issue at hand. It reads,

An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under [the FMLA] for an, part of the [twelve]-week period of such leave....

29 U.S.C. § 2612(d)(2)(B). Applying this subsection, defendants contend that they were entitled to retroactively apply plaintiff's twelve-weeks of leave to date from July 1, 1994–the first day plaintiffs medical leave.

To support their argument, defendants cite to a subsection of the regulations promulgated by the Secretary of Labor pursuant to 29 U.S.C. § 2654 interpreting the FMLA. The subsection reads,

If the employer learns that leave is for an FMLA purpose after leave has begun, such as when an employee gives notice of the need for an extension of the paid leave with unpaid FMLA leave, the entire or some portion of the paid leave period may be retroactively counted as FMLA leave, to the extent that the leave qualified as FMLA leave. For example, an employee is granted two weeks paid vacation leave for a skiing trip. In mid-week of the

second week, the employee contacts the employer for an extension of leave as unpaid leave and advises that at the beginning of the second week of paid vacation leave the employee suffered a severe accident requiring hospitalization. The employer may notify the employee that both the extension and the second week of paid vacation leave (from the date of the injury) is designated as FMLA leave.

29 C.F.R. § 825.208(d).[5] Thus defendants argue that their decision to apply plaintiff's leave retroactively from July 1, 1994 (ending September 26, 1994) was well within their discretion.

Plaintiff cites a different subsection of the same regulation to argue against such retroactive application.

If the employer requires paid leave to be substituted for unpaid leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, this decision must be made by the employer within two business days of the time the employee gives notice of the need for leave, or where the employer does not initially have sufficient information to make a determination, when the employer determines that the leave qualifies as FMLA leave if this happens later. The employer's designation must be made before the leave starts, unless the employer does not have sufficient information as to the employee's reason for taking the leave until after the leave commenced. If an employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employee either gives notice of the need for leave or commences leave and fails to designate the leave as FMLA leave ..., the employer may not designate leave as FMLA leave retroactively, and may designate only prospectively as of the date of notification to the employee of the designation. In such circumstances, the employee is subject to the full protections of

the Act, but none of the absence preceding the notice to the employee of designation may be counted against the employee's [twelve]-week FMLA leave entitlement.

29 C.F.R. § 825.208(c). The interim regulations, in effect when defendants designated plaintiff's leave retroactively, contained a similar but less specific provision:

If the employer decides that paid leave should be substituted for unpaid leave, or that paid leave taken under an employer's existing leave plan counted as FMLA leave, the decision must be made in response to the request (notice) by the employee.

58 Fed.Reg. 31,794, 31,803 (1993) (codified at 29 C.F.R. § 825.208(c)) (proposed June 4, 1993).

■ These subsections both seem to apply on the instant facts. Defendants learned that plaintiff's medical leave was for an FMLA purpose after it had begun: as in the example, plaintiff was taking a vacation day when she informed Mayor Jost of her injuries. *See* Plaintiff's App. at 55. Although plaintiff did not mention the FMLA by name at that time, she described the nature and extent of her injuries to Mayor Jost, informed him that she had been hospitalized, and told him that she would be unable to return to work for some time due to her medical condition. *See* Viereck Aff. ¶¶ 25–30. This information places plaintiff in the "serious health condition" category of employees eligible for FMLA leave. *See* 29 U.S.C. § 2612(a)(1)(D) (regarding an employee's ability to perform her work functions); 29 U.S.C. § 2611(11) (regarding hospitalization and continuing medical treatment). Furthermore, the July 1, 1994 telephone call constitutes sufficient notice under the regulations and FMLA caselaw. *See, e.g., Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir.1995) (" '[A]n employee giving notice of the need for unpaid FMLA leave does not

---

**5.** The interim regulations, in place during the summer of 1994, contain a similar provision:

If circumstances are such that this decision is not made before leave has begun, e.g., because the need for the leave was unexpected, or because an employee was on personal, vacation, or sick leave for an FMLA purpose and

did not advise the employer of the purpose and the employee requests an extension of the leave, the employer or the employees may retroactively designate the entire leave period (or the appropriate part) as FMLA leave.

58 Fed.Reg. 31,794, 31,803 (1993) (codified at 29 C.F.R. § 825.208(d)) (proposed June 4, 1993).

need to expressly assert rights under the Act of even mention the FMLA to meet [her] obligation to provide notice, though [she] would need to state a qualifying reason for the needed leave.'" (quoting 29 C.F.R. § 825.208(a)(2))).

Accordingly, under 29 C.F.R. § 825.208(d), defendants could have designated plaintiff's leave as FMLA leave retroactively. However, defendants failed to comply with the procedures for doing so set forth in 29 C.F.R. § 825.208(c) or its precursor from the interim regulations. Whereas the final regulations require that an employer make the decision to designate leave retroactively within two business days of getting notice, see 29 C.F.R. § 825.208(c), the interim regulations required a decision "in response to the request (notice) by the employee." 58 Fed. Reg. 31,794, 31,803 (1993) (codified at 29 C.F.R. § 825.208(c)) (proposed June 4, 1993). The different wording merely offers two different ways of setting the same basic requirement: that employers designate leave as FMLA leave within a reasonable time of receiving employee notice.

This defendants did not do. Defendants did not designate plaintiff's leave as FMLA leave until after September 2, 1994, over two full months after the July 1, 1994 telephone conversation in which she gave them notice of her FMLA-qualifying condition and just three days after they denied her request for six months of unpaid leave. Only when confronted with the requirements of the FMLA did defendants acknowledge their legal obligation.

Even if, as defendants contend, plaintiff did not give them notice on July 1, 1994, her July 25, 1994 note to Mayor Jost and Mr. Holman constituted such notice. See Plain-tiff's App. at 33 (mentioning continuing medical treatment and an inability to return to work). Within five weeks of this note, defendants had still not designated plaintiff's leave as FMLA leave. These lengths of time are simply too long to be considered reasonable responses to employee notice.

■ Thus, the latter part of 29 C.F.R. § 825.208(c) comes into play. Where an employer has the requisite knowledge to determine that leave is FMLA-qualified but fails to do so, it "may not designate leave as FMLA leave retroactively, and may designate it only prospectively as of the date of notification to the employee of the designation." Id.[6] Defendants notified plaintiff of their FMLA designation by letter dated September 2, 1994. See Plaintiff's App. at 47. Thus. applied prospectively, plaintiff's FMLA leave should run from September 6, 1994 until November 29, 1994.[7]

■ Defendants' termination of plaintiff for excessive absenteeism during her FMLA leave violated the Act. See 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of . . . any right provided under this subchapter."); see also Kaylor v. Fannin Reg'l Hosp., Inc., 946 F.Supp. 988, 999 (N.D.Ga.1996) (reading § 2615(a)(1) as a strict-liability standard). Mr. Holman states in his certification that he terminated plaintiff on September 28.1994 due to her "excessive absenteeism and the need for a permanent replacement." Holman Cert. ¶ 4.[8] He similarly testified at a civil service hearing that he considered her absence beginning on July 1, 1994 when he decided to terminate her employment. See Plaintiff's App. at 77–78. Accordingly, plaintiff is entitled to ap-

---

6. This language too finds its origins in the interim regulations. If the decision to apply leave retroactively "must be made in response to" employee notice, and an employer fails to so do, the only possible alternative is prospective application. 58 Fed.Reg. 31,794, 31,803 (1993) (codified at 29 C.F.R. § 825.208(c)) (proposed June 4, 1993).

7. The Court arrives at the September 6, 1994 figure as follows. The twelve-week leave period runs from defendants' "notification to an employee." 29 C.F.R. § 825.208(c). Where an em-

ployer mails notification to an employee, she is "notified" upon her receipt of same. Assuming defendants mailed the September 2, 1994 letter that day (a Friday), plaintiff would have received it by September 6, 1994 (a Tuesday). (No mail was delivered on Sunday, September 4, 1994 or Monday, September 5, 1994 since the latter was Labor Day.)

8. Of course, defendants did not fill plaintiff's position until February 2, 1995—after plaintiff had recovered and sought to return to work.

propriate compensatory damages and other equitable relief under 29 U.S.C. § 2617(a)(1).

 Defendants maintain that even if plaintiff's termination in September violated the FMLA, no damages resulted from their breach. They argue that because doctors permitted plaintiff to return to work on December 1, 1994, after her FMLA leave should have expired, defendants would have fired plaintiff for excessive absenteeism anyway on November 30, 1994.[9]

Whether plaintiff could have or would have returned to work on November 29, 1994 is pure speculation. Because defendants had fired plaintiff weeks earlier, one cannot place much emphasis on the precise timing of her December 1, 1994 return date. Indeed, if it meant saving her job, plaintiff probably could have appeared for work two days earlier than her doctors recommended, she could have scheduled her last doctor's appointment sooner, or she could have convinced her doctors to permit her to return a couple of days earlier. While the Court tends to believe that plaintiff would have returned to work two days earlier to save her job,[10] this is a factual inquiry on which the record is not free from doubt. Therefore, summary judgment on this issue would not be appropriate.

### III. CONCLUSION

Because, as a matter of law, defendants terminated plaintiff in violation of the FMLA, the Court will deny defendants' motion for summary judgment and grant plaintiff's motion for summary judgment in part with respect to the application of plaintiffs FMLA leave. Because genuine issues of material fact remain as to plaintiff's damages, see, e.g., Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir.1995) (adjusting back-pay award in light of plaintiff's duty to mitigate damages), and as to whether plaintiff was able to continue working upon the expiration of her leave, the Court will deny plaintiff's motion in part with respect to these issues.

An appropriate order will issue on even date herewith.

---

9. In an administrative hearing on plaintiff's removal, an administrative law judge found that two days absence was sufficient under plaintiff's circumstances to constitute chronic and excessive absenteeism as a basis for her removal. *See* Defendants' Ex. N at 12.

10. November 29, 1994 was a Tuesday; December 1 of that year was a Thursday.