Delois BLANKENSHIP, Plaintiff,

v.

**BUCHANAN GENERAL HOSPITAL, Inc., Defendant.**

**Civil Action No. 96–0182–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Feb. 3, 1998.

Edward G. Stout, Jr., Bristol, VA, for Plaintiff.

Robert J. Breimann, Grundy, VA, for Defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

Delois Blankenship ("Blankenship") seeks damages for an alleged violation of the Fami-

ly Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611–2654 (1997), by Buchanan General Hospital, Inc. ("Hospital"). Blankenship contends that she was terminated from her position of employment with the Hospital in contravention of the FMLA. This case is before the court on the Hospital's motion for summary judgment.[1] The court exercises jurisdiction pursuant to 28 U.S.C. § 1331 (1997).

### I. FACTUAL BACKGROUND

Blankenship began work as an "as needed" employee at the Hospital in August of 1991 and was later placed in a full-time position as a dietary aide.[2] The instant dispute began in June of 1994 when Blankenship's mother passed away. This event caused Blankenship great distress forcing her to leave work for an extended period of time. Blankenship worked her full shift on August 28, 1994 planning to take a day off on August 29 and return to work on August 30. She contends however, that she remained out of work until September 19, 1994 at the direction of her family physician, Dr. Tom McDonald ("Dr.McDonald"), who diagnosed her with severe stress and depression rendering her unable to work. During this period away from work, Blankenship intended to utilize paid leave accumulated as vacation and sick time. On September 19, 1994, Blankenship requested additional leave under the FMLA due to her continuing serious health condition. That day, Blankenship claims to have partially completed an Employee Request for Family or Medical Leave form ("FMLA form"). She signed the second page of this FMLA form and dated it September 19, 1994 assuming that her twelve weeks of leave permitted by the FMLA commenced that day. Blankenship contends that Brenda

1. On February 4, 1997, the Hospital filed a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). In its brief supporting the motion to dismiss and at the December 9, 1997 hearing, the Hospital moved for consideration of the same issues as a motion for summary judgment. Both parties have presented materials outside of their pleadings for the court's consideration and as a result, we evaluate the Hospital's motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. *See Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3d 993, 997 (4th Cir.1997); *Wilson–*

*Cook Med., Inc. v. Wilson,* 942 F.2d 247, 252 (4th Cir.1991).

2. The parties' pleadings are in dispute as to whether Blankenship became a full-time employee on November 22, 1991 or November 22, 1992. The FMLA only requires that an employee be working for twelve months in order to qualify for FMLA leave. 29 C.F.R. § 825.110. Because the parties have not contested Blankenship's eligibility for FMLA leave, this factual difference is not material to the summary judgment motion pending before the court.

Yates ("Yates"), of the Hospital's personnel staff, completed the first page of the FMLA form which lists August 28, 1994 as the anticipated start date of Blankenship's FMLA leave. According to her affidavit, Blankenship did not see the first page of the FMLA form at this time.

In late October, 1994, Blankenship received a complete copy of the FMLA form she signed on September 19, 1994. At this time, she realized that the Hospital had listed her FMLA leave start date as August 28, 1994 rather than September 19, 1994. Blankenship sought clarification from the Hospital and was informed that her FMLA leave time had indeed begun on August 28, 1994. In early November, Blankenship spoke with Yates who informed her that her FMLA leave ended on November 28, 1994, at which time she would be expected to return to work. Based on the information received from Yates, Blankenship claims to have obtained a doctor's approval to return to work on November 29, 1994.[3]

On November 21, 1994, twelve weeks after August 28, 1994, the Hospital terminated Blankenship's employment. That same day, Yates wrote Blankenship a letter advising her of her dismissal for failure to return to work after the expiration of her FMLA leave. Blankenship alleges, and Dr. McDonald confirms, that this turn of events caused her to become greatly upset and has since forced her to rely on disability insurance payments because she has been unable to work. She filed the present action on November 19, 1996 alleging that her termination constituted a violation of the FMLA.

## II. *LAW AND DISCUSSION*

### (1) Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In essence ... the inquiry [on a motion for summary judgment is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" when "the evidence is such that a reasonable [fact-finder] could return a verdict for the nonmoving party." *Id.* 477 U.S. at 248. On a motion for summary judgment the court must view all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

### (2) The FMLA

The FMLA, enacted in 1993, is intended to "balance the demands of the workplace with the needs of families" and "entitle employees to take reasonable leave for medical reasons." 29 U.S.C. §§ 2601(b)(1) and (2). The FMLA requires employers to: (1) permit an eligible employee at least twelve work weeks of leave each year for certain exigent circumstances and (2) place an employee who has taken such leave in accordance with the FMLA in the same or a comparable position upon his/her return to work. Circumstances qualifying for FMLA leave include the onset of a "serious health condition that makes an employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves ... continuing treatment by a health care provider." 29 U.S.C. § 2611(11). These provisions are enforced by 29 U.S.C. § 2615(a)(1) which provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of ... any right provided under this subchapter." A violation of the FMLA is enforceable by a civil action brought by or

---

**3.** Blankenship periodically supplied the Hospital with statements from her physicians affirming

her inability to work during her term of leave.

on behalf of aggrieved employees in state or federal court. 29 U.S.C. § 2617(a)(2).

In its motion for summary judgment, the Hospital contends that Blankenship has failed to allege any violation of the FMLA, in part, because Blankenship was never sufficiently restored to health to resume work. The Hospital places great emphasis on Blankenship's receipt of short-term disability benefits during her FMLA leave period, continuing after her dismissal, as well as her receipt of long-term disability benefits after she was terminated. The Hospital argues that these benefits establish that she was disabled well past November 21, 1994 and could not have returned to work. Alternatively, the Hospital relies on statements by Blankenship that she could have returned to work on November 21 had she known that the Hospital calculated her FMLA leave to expire on that date. If this is true, the Hospital argues, then Blankenship was inappropriately utilizing FMLA leave when she was not actually disabled. Based on these allegations, the Hospital asserts that summary judgment is appropriate because Blankenship either could not return to work at the end of her FMLA leave due to a continuing disability or could have returned prior to November 21, 1994 and abused FMLA policy by continuing to take leave. In either case, the Hospital argues that it complied with the FMLA in addressing Blankenship's situation and ultimately terminating her employment.

Blankenship counters the Hospital's motion by asserting a number of violations of the FMLA by the Hospital. Blankenship's sworn statement argues that the Hospital violated the implementing regulations of the FMLA by failing to give her the requisite notice, mandated by 29 C.F.R. § 825.208(b)(1) (1997), that her time off work from August 28, 1994 to September 19, 1994, counted towards her twelve weeks of FMLA leave. She further claims that the Hospital misrepresented the end date of her leave by informing her that she was to return on November 29, 1994 and then terminating her on November 21, 1994. Blankenship further contends that the Hospital retroactively des-

ignated the period between August 28, 1994 and September 19, 1994 as FMLA leave violating 29 C.F.R. § 825.208(c). Because the court finds that genuine issues of fact exist surrounding the Hospital's alleged failure to give notice pursuant to 29 C.F.R. §§ 825.208(b)(1) and (c) as well as the Hospital's statement to Blankenship that her FMLA leave ended on November 28, 1994, the court denies the Hospital's motion for summary judgment.

(3) 29 C.F.R. §§ 825.208(b)(1) and (c)

■ The FMLA, at 29 U.S.C. § 2612(d)(2)(B), states that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under [the FMLA] for any part of the 12 week period of such leave." "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee." 29 C.F.R. § 825.208(a); *see Price v. City of Fort Wayne,* 117 F.3d 1022, 1026 (7th Cir.1997). Consequently, Blankenship does not contest the Hospital's right to include, in her twelve weeks of FMLA leave, her accumulated paid and vacation leave.[4] Blankenship does argue, however, that the FMLA creates a notice requirement when an employer designates specific vacation or sick leave as FMLA leave.

> [A]n employee using accrued paid vacation leave who seeks an extension of unpaid leave for an FMLA-qualifying purpose will need to state the reason. If this is due to an event which occurred during the period of paid leave, the employer may count the leave used after the FMLA-qualifying event against the employee's 12–week entitlement.
>
> (b)(1) Once the employer has acquired knowledge that the leave is being taken for an FMLA required reason, the employer must promptly (within two business days absent extenuating circumstances) notify the employee that the paid leave is designated and will be counted as FMLA leave.

---

4. This policy was explained to Blankenship on page 15 of the Hospital's Employee Handbook.

29 C.F.R §§ 825.208(a)(2) –(b)(1). While the court's research has revealed no case law construing this provision of the FMLA's implementing regulations, the quoted language is clear. An employer must give an employee notice when non-FMLA leave taken by that employee is designated as FMLA leave. The regulation mandates that this notice be conveyed within two days after the employer ascertains that the employee intends to take leave for an FMLA-qualifying reason. This notice requirement is echoed by 29 C.F.R. § 825.208(c).

> If the employer requires paid leave to be substituted for unpaid leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, this decision must be made by the employer within two business days of the time the employee gives notice of the need for leave.

In the context of a factual scenario similar to the instant case, a district court recently interpreted this regulation to require "that an employer make the decision to designate leave retroactively within two business days of getting notice." *Viereck v. City of Gloucester*, 961 F.Supp. 703, 707 (D.N.J.1997).

■ In *Viereck*, the plaintiff was injured in a car accident and began a period of leave from work on June 30, 1994. Plaintiff informed her employer of her injuries on July 1, 1994, exhausted her accumulated sick and vacation leave by August 2, 1994, and requested her twelve weeks of FMLA leave on August 31, 1994. Her employer granted the requested leave on September 2, 1994 at that time retroactively designating plaintiff's leave beginning on July 1, 1994, as FMLA leave. This calculation resulted in plaintiff's FMLA leave terminating on September 26, 1994. When plaintiff failed to return on that day, she was fired. The court in *Viereck* compared 29 C.F.R § 825.208(c) with the interim regulations of the FMLA to reach the conclusion that the FMLA requires "that employers designate leave as FMLA leave within a reasonable time of receiving employee notice." The court found that the employer had been made aware that plaintiff's leave qualified under the FMLA on July 1, 1994 but waited over two months, until September 2, 1994, to actually designate plaintiff's time away from work as FMLA leave. The court found this to be an unreasonable amount of time and a violation of the FMLA.[5] While the case law on these provisions is sparse, the language of both regulations imposes a burden on an employer to notify an employee within a reasonable time when paid leave is to be counted as FMLA leave.

■ Accepting Blankenship's version of events, as the court must at this stage of the litigation, she originally left work for a period of non-FMLA leave from August 29, 1994 until September 19, 1994, on the advice of her doctor. When her condition failed to improve, Blankenship needed to extend her leave as contemplated by 29 C.F.R. § 825.208(a)(2). She applied for FMLA leave on September 19, 1994 by completing the second page of an FMLA form without seeing the first page of the form. At this point, the Hospital knew that her request was for an FMLA-permitted condition, namely, her anxiety and subsequent inability to perform her duties. Blankenship assumed that September 19, 1994 would be the start date for her twelve weeks of leave available under the FMLA. Her affidavit states however, that in late October, at least a month after she given notice of her intent to take FMLA leave, she received the entire two-page FMLA form that she had signed on September 19, 1994. Only then did she realize that the Hospital had completed the first page of the form listing the anticipated start date of her FMLA leave as August 28, 1994, rather than September 19, 1994.

The form notified Blankenship that the Hospital retroactively counted the time period between August 28, 1994 and September 19, 1994 towards her twelve weeks of available FMLA leave. On the basis of her affidavit, Blankenship was not made aware of this calculation until approximately one month after the Hospital acquired knowledge

---

**5.** The district judge also considered an argument by the employer that it was not given notice of plaintiff's FMLA-qualifying leave until five weeks, rather than two months, before making the retroactive designation. The court found five weeks to also be an unreasonable response to an employee's notice. *Viereck*, 961 F.Supp. at 707.

that she had requested leave under the FMLA. Even accepting *arguendo,* that the Hospital was within its rights to retroactively designate FMLA leave in this case, pursuant to 29 C.F.R. § 825.208(b)(1) and (c), the Hospital had a duty to notify Blankenship of this decision, at the very least, within a reasonable time after September 19, 1994. In the court's estimation, a month is not reasonable. The Hospital's failure to give timely notice is not effected by Blankenship's ability or inability to return to work on November 21, 1994. Contrary to the assertions of the Hospital, Blankenship has alleged a violation of the FMLA and raised a sufficient factual question to survive summary judgment.[6]

### (4) Equitable Estoppel

■ Blankenship's also raises the doctrine of equitable estoppel as a bar to the Hospital's motion. She contends that the Hospital misrepresented her return date and subsequently dismissed her when she relied on this misinformation. In her sworn affidavit, Blankenship describes an early November conversation with Yates, the Hospital's personnel director, in which Yates allegedly informed her that her FMLA leave was to end on November 28, 1994. Based on this representation, Blankenship planned to return to work on November 29, 1994 and later that month, obtained a "return to work" certificate from her physician indicating that she would be capable of resuming work on that date. Blankenship never had the opportunity to return, however, because the Hospital terminated her on November 21, 1994.

The Hospital counters this estoppel argument by asserting that the FMLA imposes no duty upon an employer to notify an employee when she is expected to return to work after a period of FMLA leave. As noted above, the Hospital also claims that Blankenship was able to return to work on November 20, 1994, but instead continued to

take leave in violation of the FMLA. Alternatively, the Hospital argues that Blankenship was subject to discharge based on her continuing disability which rendered her incapable of resuming her duties on November 20, 1994. While these arguments offer a variety of explanations for Blankenship's dismissal, they fail to address the allegation that the Hospital misled Blankenship as to her expected return date. Construing the facts in Blankenship's favor, as we must, the Hospital is unable to dispel factual issues surrounding her equitable estoppel claim.

■ "Equitable estoppel 'arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation.'" *Bakery and Confectionery Union v. Ralph's Grocery Co.,* 118 F.3d 1018, 1027 (4th Cir.1997) (citing *Black v. TIC Inv. Corp.,* 900 F.2d 112, 115 (7th Cir.1990)). "Equitable estoppel applies when the defendant attempted to mislead the plaintiff and the plaintiff reasonably relied upon the representation." *Howze v. Virginia Polytechnic Inst.,* 901 F.Supp. 1091, 1095 (W.D.Va. 1995) (citing *C.M. English v. Pabst Brewing Co.,* 828 F.2d 1047, 1049 (4th Cir.1987)). Equitable estoppel is generally applied to "aid a party who, in good faith, has relied, to his detriment upon the representations of another." *United States v. Fidelity and Cas. Co.,* 402 F.2d 893, 897 (4th Cir.1968). The party asserting equitable estoppel generally must prove a misrepresentation by the party against whom estoppel is asserted, reasonable reliance on the misrepresentation by the asserting party, and detriment to the asserting party. *Heckler v. Community Health Serv.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

Equitable estoppel is a device by which one, who by his statement induces detri-

---

**6.** The Hospital's Employee Handbook, which Blankenship reviewed prior to being hired, does notify employees that their vacation, personal, and sick leave will be exhausted as a part of any FMLA leave. While this provision may have placed Blankenship on notice of the exhaustion requirement, it does not speak to the retroactive classification of vacation and sick leave as FMLA leave as occurred in this case. Blankenship had already utilized paid leave between August 29,

1994 and September 19, 1994 when she applied for additional leave under the FMLA. Nothing in the Employee Handbook informed Blankenship that this paid leave would be subtracted from the twelve weeks of FMLA leave she applied for on September 19, 1994. As a result, an issue of material fact exists as to when the Hospital notified Blankenship that her paid vacation and sick leave would count towards her FMLA leave.

mental reliance of another, will not be heard later to contradict the statement that induced the reliance. A person can be equitably estopped even when his earlier statement was not false. Fairness simply dictates that he should not be allowed to change his statement which has been detrimentally relied upon.

*Lissmann v. Hartford Fire Ins. Co.,* 848 F.2d 50, 53 (4th Cir.1988).

While equitable estoppel does not yet appear to have been employed in the context of the FMLA, Blankenship's circumstance is substantially similar to federal cases applying the doctrine. Equitable estoppel has been applied to claims invoking the Age Discrimination in Employment Act ("ADEA") to toll limitations periods where employers cause their employees to miss statutory filing deadlines. *See C.M. English,* 828 F.2d at 1049 (finding equitable estoppel to be available under the ADEA but the specific facts of the case insufficient to support the application of equitable estoppel to toll a filing deadline). In *Clark v. Resistoflex Co.,* 854 F.2d 762, 768 (5th Cir.1988), the plaintiff's employer offered severance benefits, to be distributed over a period of time, provided that the plaintiff not disclose any information detrimental to the employer. Plaintiff abided by this plan and failed to timely file his age discrimination claim pursuant to the ADEA. The Eighth Circuit held that the company could be found to have "by design or with a clear understanding of the consequences, worded the severance agreement in such a way as to deter [plaintiff] from asserting his ADEA rights." *Id.* at 768. Similarly, in *Eye v. Fluor Corp.,* 952 F.Supp. 635, 642–43 (E.D.Mo.1997), a district court found that an employer may be equitably estopped from relying on a statute of limitations for an ADEA claim where a terminated employee was denied information bearing on the existence of his ADEA claim until after the filing deadline had passed. Equitable estoppel prevents defendants from benefiting from their own misrepresentations.

Courts have also considered the application of equitable estoppel to cases arising under Title VII. *See Howze,* 901 F.Supp. at 1095. The court in *Richardson v. Frank,* 975 F.2d 1433, 1435 (10th Cir.1991), found that equitable estoppel could apply where an employer misled an employee as to the elements and filing deadlines applicable to his Title VII claim. *See also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (finding equitable doctrines including equitable estoppel applicable to Title VII). Equitable estoppel has arisen in the context of the Employee Retirement Income Security Act ("ERISA") as well. In *Elmore v. Cone Mills Corp.,* 23 F.3d 855, 863 (4th Cir.1994), a divided en banc panel determined that equitable estoppel could potentially be used to compel an employer to include representations made to its employees concerning the content of a future Employee Stock Ownership Plan in the formal plan documents later enacted. Equitable estoppel has also been utilized in contract claims including *Fidelity and Cas. Co.,* 402 F.2d at 898–99, where the defendant was estopped from later denying a promise where it was reasonably foreseeable that the plaintiff would rely on the promise.

While equitable estoppel has not yet been applied to the FMLA, this doctrine is well-suited to Blankenship's claims in the instant case. Blankenship, like the plaintiffs in the above mentioned cases, alleges that the Hospital made a misrepresentation concerning a crucial date upon which she relied. She asserts that in an early November meeting, Yates represented the end date of her FMLA leave to be November 28, 1994. The Hospital's personnel director certainly would be expected to be a reliable source concerning such a date. As a result, Yates' statement was a reasonably relied upon misrepresentation. On the basis of Yates' statement, Blankenship obtained a "return to work" certificate for that date. Blankenship's physician affirms in the record that Blankenship was planning to return to work on November 28, 1994. She suffered detriment when she relied on Yates' statement, did not report to work on November 20, 1994, and was subsequently dismissed. Blankenship's pleadings, accepted as true, establish the elements necessary for equitable estoppel; a misrepresentation, reasonable reliance, and detriment.

While the Hospital correctly asserts that the FMLA does not explicitly require employers to inform employees as to the end date of specific periods of FMLA leave, in the instant case, the averred facts suggest that the Hospital misled Blankenship with regard to this date. The November 21, 1994 letter explaining Blankenship's termination indicates that "[a]fter a review of your FMLA leave [the Hospital] found that the leave expired on November 20, 1994. Due to this expiration your employment with Buchanan General Hospital will terminate today, November 21, 1994." This letter reveals that the Hospital dismissed Blankenship for her failure to return to work on November 21, 1994. The Hospital's assertions that Blankenship was properly terminated because she was either able to work or remained disabled on November 21, 1994, are inapposite based on the Hospital's own statement in the termination letter indicating that she was fired solely because she did not report for work on November 21, 1994. At this stage of the proceedings, the Hospital cannot be heard to rely on freshly minted justifications for Blankenship's dismissal. Moreover, these explanations cannot erase the Hospital's alleged affirmative misrepresentation. Having misrepresented the return date to Blankenship, the Hospital could reasonably foresee her subsequent reliance on such information supplied by the Hospital's personnel director. As a consequence of this reliance, Blankenship suffered detriment when she was terminated. As a result, a factual issue exists as to whether estoppel renders Blankenship's firing improper. Regardless of what the FMLA requires of the Hospital in the way of notice, this alleged affirmative misrepresentation supports the application of equitable estoppel.

Blankenship's claims that she was mislead by the Hospital are farther buttressed by the Hospital's alleged violation of the notice requirements detailed in 29 C.F.R. § 825.208(b)(1) and (c). The Hospital's failure to give notice could be interpreted to have further misled Blankenship as to the final date of her FMLA leave and contributed to the Hospital's misrepresentation. Construing the pleadings in the light most favorable to Blankenship, the lack of timely notice and the early November misinformation support the application of equitable estoppel to the instant case. A genuine issue of material fact exists as to whether the Hospital misrepresented to Blankenship the date upon which she was expected to return to work.

## III. CONCLUSION

The Hospital has failed to establish a lack of genuine issues of material fact in this case. Questions of fact remain as to whether the Hospital complied with the FMLA in timely notifying Blankenship that her paid leave between August 28, 1994 and September 19, 1994 counted towards her FMLA. Moreover, the Hospital's actions may warrant the application of equitable estoppel. These issues are inappropriate for summary judgment and must be decided by a jury.

An appropriate Order will be entered this day.

## ORDER

For the reasons stated in the Memorandum Opinion entered this day, it is hereby ADJUDGED and ORDERED that the Defendant's motion for summary judgment is DENIED.

The Clerk is directed to send copies of this Order to all counsel of record.