534 S.E.2d 282

**Norma DREW, Respondent,**

**v.**

**WAFFLE HOUSE, INC., Appellant.**

**No. 3190.**

Court of Appeals of South Carolina.

Heard Feb. 10, 2000.

Decided June 12, 2000.

Rehearing Denied Sept. 2, 2000.

462

464

Weyman T. Johnson, Jr., Nancy E. Rafuse and David E. Gevertz, all of Paul, Hastings, Janofsky & Walker, of Atlanta, GA; and E. Mitchell Griffith, of Griffith & Sadler, of Beaufort, for appellant.

James B. Richardson, Jr., and Samuel S. Svalina, both of Svalina, Richardson & Larson, of Columbia; and J. Brent Kiker, of Kiker & Douds, of Beaufort, for respondent.

HUFF, Judge:

In this wrongful termination case, a jury determined Waffle House, Inc. violated the federal Family and Medical Leave Act. Pursuant to statutory authority, the court awarded Norma Drew a total of nine hundred seven thousand, nine hundred sixty two dollars [1]. Waffle House appeals. We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

Norma Drew began working for Waffle House, Inc. (WHI) on June 28, 1978. On March 13, 1993, Drew, a unit manager at a Waffle House in Hardeeville, suffered significant injuries to her shoulder and arms from a fall she took while trying to restrain a Waffle House sign blowing around the restaurant's parking lot during a severe windstorm. Drew immediately informed her supervisor, District Manager Jerry Spry, about the accident, and traveled to the emergency room of the local hospital for treatment. Eventually, Drew was diagnosed with carpal tunnel syndrome in her hands and a torn rotator cuff in her right shoulder.

Despite her injuries, Drew continued to work as the unit manager of the Hardeeville Waffle House for several months, often in pain and unable to move her right arm above her head. At the beginning of the new year, Drew's doctor recommended she have surgery to repair the torn rotator cuff in her shoulder. Accordingly, Drew orally requested a leave of absence from WHI on January 3, 1994. Drew made the request through her immediate supervisor, Tom Palmer, who had replaced Jerry Spry as district manager. Palmer orally approved the request. In addition, a few days later Drew discussed her situation with Division Manager Tony Langdale, Palmer's boss, and Regional Manager Steve Clausen, both of whom encouraged her to have the surgery.

Drew's last day of work before taking leave was January 15. On January 16, she underwent the surgery on her shoulder. Around the first of February, Drew received a letter from Steve Clausen mentioning the "Federal Leave Act" and alleg-

---

1. A portion of this award was vacated and dismissed by agreement of the parties.

edly informing Drew that her FMLA leave would be "effective for a maximum of twelve weeks."

Throughout the next few weeks, Drew occasionally dropped by her store to check on her employees. On April 1, while visiting the unit, Drew told Tom Palmer she was ready to come back to work but had not received a release from her physician. She further informed Palmer she had a doctor's appointment on April 19 and felt she would get the release at that time. Palmer, in turn, assured Drew everything was fine.

On April 19, Drew saw her doctor and obtained a release for the following week. When Drew attempted to return to work on April 25, however, Palmer informed her she no longer had a job. WHI's stated reason for the dismissal was excessive absenteeism.

Drew filed a complaint against Waffle House on February 24, 1995, alleging retaliatory discharge and breach of an implied contract for employment. Drew amended the complaint, adding a cause of action for wrongful termination in violation of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.* (1994) At a pre-trial conference, Drew voluntarily withdrew her claim for retaliatory discharge.

At trial, the court submitted to the jury the implied breach of contract claim and a special interrogatory to determine if WHI interfered with Drew's rights under the FMLA, but denied WHI's motion for a pre-verdict election of remedies. The jury returned a verdict in favor of Drew, awarding $600,000.00 in actual damages. In answering the special interrogatory, the jury also found Waffle House liable for interfering with Drew's rights under the FMLA.

WHI filed timely motions for J.N.O.V. and, alternatively, new trial absolute. WHI also renewed its motion for an election of remedies. As required, Drew elected to pursue her remedy under the FMLA, and filed a motion asking the court to assess and award actual damages, liquidated damages, attorney's fees, costs, and prejudgment interest accordingly. On February 18, 1998, the trial court issued an order denying WHI's motions and awarding Drew the following: as to the FMLA cause of action, the court awarded $103,273.00 in actual damages, prejudgment interest in the amount of $32,756.90,

future damages or front pay of $304,845.69, and $440,875.59 in liquidated damages. This appeal followed.

## LAW/ANALYSIS

### I. Violation of FMLA

WHI first argues the trial court erred in denying its motion for J.N.O.V., because its termination of Drew for failure to return to work was lawful. We disagree.

The FMLA guarantees an eligible employee up to twelve weeks of leave for a "serious health condition" rendering the employee unable to perform his normal job duties. 29 U.S.C. § 2612(a)(1)(D). In the employer's discretion, such leave may be paid or unpaid. *Id.* at § 2612(d)(1). With certain limited exceptions not applicable to the case before us, an employee who takes leave pursuant to the Act and returns to work is entitled to restoration in the same position held before the leave commenced, or alternatively, must be given an equivalent position with equal benefits, pay, and other terms and conditions of employment. *Id.* at § 2614(a)(1). Specifically, the FMLA prohibits an employer's interference with an employee's exercise of any right prescribed therein. *Id.* at § 2615(a)(1). An employer who violates an employee's rights under the FMLA is liable to the employee for damages, both actual and liquidated, attorney's fees, and costs. *Id.* at § 2617(a)(1) & (3).

WHI admits it orally granted Drew a leave of absence beginning January 16, 1994. On January 27, however, WHI Regional Manager Steve Clausen wrote the following letter to Drew, in relevant part:

> As per our conversation of 1–27–94, you have requested a medical leave of absence with your effective date 1–13–94. Waffle House, Inc. will compensate you for a maximum of six weeks based on your last year's income. Your weekly gross compensation will be $642.00.
>
> Under the Federal Leave Act, your leave will be effective for a maximum of twelve weeks.

Drew testified she received this letter on or about February 1, and the trial court determined receipt was no earlier than January 31. WHI claimed at trial that the letter represented

a permissible designation of FMLA leave retroactive to January 16.

■ By statute, an employer may require an employee to substitute accrued paid leave for any FMLA leave provided pursuant to an employee's serious medical needs, *see* 29 U.S.C. § 2612(d)(2)(B), and it is undisputed Drew's leave was compensated by WHI for the first six weeks. Drew, therefore, was entitled to an additional six weeks of leave under the statutory provisions of the FMLA. *Id.* However, because the statute itself does not define the parameters of an employer's "designation" of FMLA leave, the regulations authorized by the Act and promulgated by the Secretary of Labor are controlling. *See id.* at § 2654; *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir.1995) (stating regulations of the Labor Secretary carry the force of law unless plainly contrary to statutory provisions). Thus, any violation of the regulations is actionable as a violation of the Act. *See Bryant v. Delbar Products*, 18 F.Supp.2d 799 (M.D.Tenn.1998). The Labor Secretary's "interim final rule" governing the FMLA took effect on August 5, 1993, along with the Act itself. Both parties agree that at the time the events underlying this action occurred, the "interim final rule" governed.

The provisions of the Secretary's regulations at issue are as follows:

(c) If the employer requires paid leave to be substituted for unpaid leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, this decision must be made by the employer at the time the employee requests or gives notice of the leave, or when the employer determines that the leave qualifies as FMLA leave if this happens later. The employer's designation must be made before the leave starts, or before an extension of the leave is granted, unless the employer does not have sufficient information as to the employee's reason for taking the leave until after the leave commenced. In no event may an employer designate leave as FMLA leave after the leave has ended.

(d) If either the employer or the employee designates leave as FMLA leave after leave has begun, such as when an employee requests an extension of the paid leave with

unpaid FMLA leave, the entire or some portion of the paid leave period may be retroactively counted as FMLA leave, to the extent that the leave period qualified as FMLA leave.

58 Fed.Reg. 31,821 (1993) (later codified at 29 C.F.R. § 825.208(c) & (d) (1995)).

Despite the language of the cited regulations, the parties agreed at trial that the test outlined in *Viereck v. City of Gloucester City*, 961 F.Supp. 703 (D.N.J.1997), would govern the notice issue. In *Viereck*, the district court held that "[t]he different wording [of interim and final regulations] merely offers two different ways of setting the same basic requirement: that employers designate leave as FMLA leave within a reasonable time of receiving employee notice." *Id.* at 708. The *Viereck* court also found five weeks from the employee's request for leave to the date the employer designated it as FMLA leave unreasonable as a matter of law. *Id.*

WHI designated Drew's leave as FMLA leave on January 31, some twenty-eight days after her request for time off. In answering the court's special interrogatory in the affirmative, the jury found WHI's delay unreasonable. We see no reason to disturb this finding of fact by the jury, particularly in light of WHI's failure to designate Drew's leave as FMLA leave before she left the job. WHI had sufficient information concerning the reason for Drew's request at the time it was made, and WHI should have made its designation accordingly.

WHI further argues that even if its FMLA designation was prospective only, it was effective on January 27, the date it claims the FMLA letter was mailed. However, without objection, the trial court charged the jury on the law found in *Viereck, supra,* wherein the court stated a mailed notice designating FMLA leave was effective when received. *Viereck,* 961 F.Supp. at 707 n. 7. Because WHI did not object to the court's charge, it has waived its right to allege any error on appeal. *See Creech v. S.C. Wildlife & Marine Resources Dep't,* 328 S.C. 24, 491 S.E.2d 571 (1997).

Because the jury found WHI's delay in designating Drew's time off as FMLA leave unreasonable, and because the

earliest Drew's FMLA leave could have commenced was January 31, Drew was within her statutorily-protected right to return to her job as unit manager at Waffle House on April 25, the eighty-fourth day of her guaranteed twelve-week leave. *See Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 300 (4th Cir.1998) ("[A]lthough an employer has the option of requiring an employee to designate vacation or other leave as FMLA leave, that option is waived if the employer fails to give proper notice of its intentions."). The jury did not err in finding WHI violated the FMLA in refusing to permit Drew to return to work and subsequently firing her for excessive absenteeism.[2]

## II. Bad Faith Determination

WHI next asserts the trial court erred in finding it violated the FMLA in "bad faith," thereby entitling Drew to liquidated damages. We disagree.

■ An employer who violates the FMLA provisions safeguarding an employee's job pursuant to a serious medical condition is liable to the employee for actual damages plus interest, and liquidated damages as follows:

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) [actual damages] and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively....

---

2. Moreover, since WHI did not notify Drew that her accrued vacation time was included in the twelve weeks, she should have been entitled to that time as additional leave. *See Cline*, 144 F.3d at 301 (where employer failed to designate employee's vacation time as FMLA leave, employer's termination of employee within the period of time including employee's accumulated vacation time violated the FMLA).

29 U.S.C. § 2617(a)(1)(A)(iii). To avoid a trial court's imposition of liquidated damages, therefore, an employer must prove either good faith or reasonable grounds for believing the employee's termination did not violate the Act. Even then, by the very terms of the Act itself, such reduction remains discretionary with the trial court.

■ Our standard of review on this issue, liquidated damages, is at law. Where a law case is decided by a judge alone, we will review findings of fact only for any evidence which reasonably supports the trial court's determination. See *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

■ There is evidence in the record to reasonably support the trial court's conclusion that WHI failed to demonstrate good faith or a reasonable belief that it was not violating the FMLA when it dismissed Drew for failing to return to work before April 25. By all accounts, Drew was a model employee. More specifically, Drew testified she refused to agree to the shoulder surgery before securing approval for a leave of absence from her WHI superiors, and the evidence is uncontroverted that Drew obtained oral approval for her leave of absence from Tom Palmer; Palmer, the district manager at the time and Drew's immediate supervisor, clearly possessed the authority to grant Drew time off for an illness or injury. In addition, it is undisputed WHI's upper management knew why Drew would be out of work.

Further, Palmer verbally assured Drew on April 1, and again on the 19th, that she could return to work on April 25. In his deposition testimony, Palmer acknowledged his superiors knew about Drew's request for an extension of her medical leave and voiced no objections. Tony Langdale, a division manager and Palmer's boss at the time, also testified at trial that it was reasonable for Drew to rely on what her supervisor (Palmer) said about extending the leave. No one on the WHI management team ever told Drew her job was at risk. On this record, WHI's refusal to grant Drew a discretionary leave pursuant to its own policies and procedures manual or, alternatively, her own accrued vacation time, warrants the trial court's findings. In our view, therefore, the trial court did not err in imposing liquidated damages on WHI under the FMLA.

### III.  Front Pay Award

WHI claims Drew's front pay award was improper[3].  We agree.

"Front pay, as an alternative or complement to reinstatement, is an equitable remedy" available under the FMLA. *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir. 1998).  "The infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages." *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1424 (4th Cir.1991).  Because of the potential for windfall, the use of front pay as a remedy must be tempered. *Id.* at 1423.  See *Cline, supra* (in FMLA case, referring district court to *Duke* discussion of front pay).

We find the award of nineteen years of front pay is highly speculative and unsupported by the record.  Drew testified that she "would probably still be" working for WHI as of trial, and that she "guess[ed]" she would work until age 65.  Using our standard of review in equity, which allows us to find facts in accordance with our view of the preponderance of the evidence, we find a more appropriate award is four years of front pay.  The order of the trial court is therefore modified to award Drew $84,251.80 in future damages.

### IV.  Liquidated Damages—Front Pay

WHI also claims the trial court erred in including Drew's front pay award in its liquidated damages calculation.

The FMLA provides that an employer who wrongfully terminates an FMLA-eligible employee is liable to the employee for liquidated damages in an amount equal to the sum of actual damages plus interest.  *See* 29 U.S.C. § 2617(a)(1)(A)(iii).  The relevant subsections describing damages and interest proclaim, respectively:

(1) Liability

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—

---

**3.**  WHI asserts the trial court should have considered reinstatement of Drew in her previous WHI management position as an alternative to its front pay award.  The evidence shows, however, that such relief was neither sought by Drew nor argued by WHI to the court below.

(A) for damages equal to—
(i)(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation . . . ;
(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and
(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii) . . . ;
(B) for such equitable relief as may be appropriate, including employment, reinstatement and promotion.

29 USC § 2617(a)(1)(A)–(B). Citing *Cline*, WHI contends front pay under the FMLA is an equitable remedy not subject to doubling under the Act's liquidated damages provision. We agree. As stated above, we find front pay is awarded by the court sitting in equity. *See Bryant, supra* (court will decide the equitable issue of front pay); *Souders v. Fleming Companies*, 960 F.Supp. 218 (D.Neb.1997) (front pay is an equitable issue). Therefore, it is not included under the Act's liquidated damages provision. The lower court's order is modified to award Drew liquidated damages of $136,029.90.

Accordingly, the order of the lower court is

**AFFIRMED IN PART AND REVERSED IN PART.**

CURETON and HOWARD, JJ., concur.