Jeffrey A. ZAWADOWICZ, Plaintiff,

v.

CVS. CORP., and XYZ Corp.,
a fictitious entity,
Defendants.

No. CIV. 98–453 SSB.

United States District Court,
D. New Jersey.

May 30, 2000.

William B. Hildebrand, Feldman & Hildebrand, Cherry Hill, NJ, for Plaintiff.

Martin W. Aron, Edwards & Angell, LLP, Short Hills, NJ, for Defendant CVS Corp.

**OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

BROTMAN, District Judge.

Presently before the Court are defendant CVS Corp.'s motion for summary judgment seeking dismissal of all claims and plaintiff Jeffrey Zawadowicz's cross-motion for partial summary judgment. For the reasons set forth below, CVS's motion will be granted in part and denied in part, and plaintiff's cross-motion for partial summary judgment will be denied in total.

## I. BACKGROUND

The plaintiff, Jeffrey Zawadowicz, brings this action against his former employer, CVS Corp., alleging he was wrongfully discharged in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et. seq. ("FMLA") and the New Jersey Family Leave Act, N.J.S.A. 34:11B–1 et. seq. ("FLA"). Plaintiff also asserts related state law claims for unlawful retaliation, breach of implied contract, breach of the implied covenant of good faith and fair dealing, and equitable estoppel.

### A. *Plaintiff's Position at CVS*

On or about March 23, 1998, CVS hired the plaintiff to work as an "On–Line Case Picker" in the Lumberton, New Jersey Distribution Center ("LDC"). CVS ships orders from the LDC to various locations throughout New Jersey, Pennsylvania and Delaware. As an "on-line case picker",

plaintiff was responsible for the timely and accurate picking of retail store orders. Later, plaintiff assumed the position of "Reach Truck Operator" in the LDC warehouse.

### B. CVS's Attendance Policy

In 1995, CVS instituted an attendance policy that provided all hourly employees with an attendance bank of hours ("attendance bank"). Pursuant to this policy, at the beginning of each calendar year, plaintiff received 112 hours in his attendance bank, 56 of which are paid and the remainder are unpaid. The paid hours include five sick days (forty hours), one anniversary holiday (eight hours) and one birthday holiday (eight hours). When an employee is absent or late to work, the corresponding number of hours is deducted from his attendance bank. Absences taken pursuant to authorized leave under the FMLA are exempt from deduction from the attendance bank.

The Attendance Policy provides for progressive discipline of employees with attendance problems. Employees receive a verbal advisory when they use more than one-half of their allotted hours for the year, followed by a written warning once all allotted hours are consumed. Employees receive a second written warning when they exceed their yearly allotment by eight hours, followed by separation when they exceed this allotment by sixteen hours.[1] Aron Aff., Ex. K. CVS supervisors are responsible for enforcing the attendance policy.

### C. Plaintiff's History of Absenteeism

After CVS instituted the Attendance Policy in 1995, plaintiff received several warnings concerning attendance problems. On April 24, 1995, plaintiff received a warning that stated in pertinent part:

> A recent review of your attendance records has shown an undesirable trend which you need to correct immediately. You should be aware that failure to correct the undesirable attendance trend described below could lead to severe disciplinary action, up to and including suspension or separation from CVS.

Aron Aff., Ex. H. Thereafter, in November 1995, plaintiff again was notified in writing about poor attendance, this time cautioning that he had exceeded his attendance bank. CVS restored some hours to plaintiff's attendance bank but warned that if he exceeded this amount, he would "face further disciplinary action, and possible separation from CVS." Aron Aff., Ex. I. Despite this second warning, plaintiff exhausted his allotted hours again in December, 1995, for which a third written warning was issued. See Aron Aff., Ex. J.

### D. Plaintiff's FMLA Leaves of Absence

#### 1. FMLA Leave Prior to October, 1996

Beginning in February 1996, plaintiff applied for and was granted several leaves of absences ("LOA's") under the FMLA. Plaintiff's first LOA was for the birth of his son and covered the time period from February 8 to March 11, 1996. Aron Cert., Ex. L. Plaintiff obtained a second LOA for the period of April 13 to May 1, 1996 due to another son's injury from an automobile accident. Aron Cert., Ex. M. In addition, plaintiff received LOA's due to asthmatic complications occurring on Janu-

---

**1.** Par. 5 of CVS's attendance policy provides:

Corrective counseling regarding attendance will be administered according to the following guidelines:

- *Verbal Advisory:* To advise an employee that they have utilized more than one-half of their *total eligible bank of hours.*

- *1st Written Counselling* [sic]: To advise an employee that *all PAID and UNPAID HOURS* in their bank have been utilized.
- *2nd Written Counselling* [sic]: To advise an employee that they have exceeded their total available bank by *8* hours.
- *Separation:* Employee has exceeded their total available bank by *16* hours.

Aron Aff., Ex. K at ¶ 5.

ary 25–26 and June 11–14, 1996. Aron Aff., Ex. N. Plaintiff submitted a medical certification for each of the approved LOA's discussed above.

### 2. October, 1996 FMLA Leave

Plaintiff's wife, Tammy Zawadowicz, also was employed by CVS as an equipment operator. On October 17, 1996, Mrs. Zawadowicz was injured during her shift when two doublestacked pallets fell from a forklift she was operating, striking her on the back of the head. As a result of this accident, Mrs. Zawadowicz sustained injuries to her back and neck, which injuries plaintiff alleges "rendered her totally incapacitated and unable to walk." Pl.'s Opp'n Br. at 2.

To assist his wife at home, plaintiff requested a LOA on October 17, 1996. Plaintiff submitted a medical certification from Mrs. Zawadowicz's then-treating physician, Dr. Josephson, dated November 4, 1996, which stated that plaintiff's assistance was required for "basic medical, hygiene, nutritional needs, safety or transportation." Aron Aff., Ex. O. Dr. Josephson limited the time period for this assistance to "no more than 3–4 weeks" or from "October 18, 1996 to November 29, 1996." *Id.* CVS approved plaintiff's LOA request on November 27, 1996.

### 3. January 23, 1997 FMLA Leave

At the end of November, 1996, Mrs. Zawadowicz still had not recovered. On December 4, 1996, Mrs. Zawadowicz was examined by Dr. Josephson, who reported that she would be unable to return to work before March 1997.

Plaintiff, who was absent from work every day between October 18 and November 29, 1996, continued to take various, non-consecutive absences from work in December, 1996 and January 1997. In early January, 1997, plaintiff obtained a second LOA application and information packet regarding CVS's updated leave policy. This packet included information concerning employee rights pursuant to the

FMLA. The packet also contained the necessary forms for obtaining an LOA and supporting medical certification.

On January 23, 1997 plaintiff submitted his LOA application to CVS, which application was signed by his wife's physician and stated the duration of her condition as "Oct. 17, 1996[to] present." Aron Aff., Ex. P at unnumbered 2. Plaintiff requested leave on an intermittent basis, again stating "to present" as the probable duration of the leave. *Id.*

That same day, Chuck Martin, CVS's Human Resources Manager, notified plaintiff in writing that his leave was approved on an intermittent basis. The memorandum is a standard leave form with a space to write in the date through which leave has been approved. In this space is written the word, "intermittent." Immediately thereafter is the sentence, "Any extension to this date must be requested by submitting another 'leave of Absence Request Form' and receiving approval in advance of the above date". The form also set forth the following conditions:

C. You will be required to furnish medical certification of a serious health condition.

\* \* \*

5. While on leave, you are required to furnish the Human Resources Department with periodic reports (as appropriate for the particular leave situation) of your status and intent to return to work. If the circumstances of your leave change and you are able to return to work earlier, you are required to notify the Human Resources Department at least two business days to the date of your intention to return to work.

6. You will be required to furnish recertification relating to a serious health condition in the event you need an extension of your leave.

Hildrebrand Aff., Ex. B. Handwritten at the bottom of the first page of the memorandum is the following note, "As discussed[,] Jeff will notify me personally or

via phone mail (ext.202) if he will be absent due to wife's health condition." *Id.*

Plaintiff claims that the January 23, 1997 LOA ("January LOA") authorized "intermittent leave for an indefinite period in the future, up to the 26–week limit stated in CVS's Employee Handbook." Pl.'s Opp'n Br. at 4. CVS asserts that the January LOA terminated on January 23,- 1997, the date on which the form was signed, and therefore only approved prior absences.

### E. Plaintiff's Absences after January 23, 1997

After January 23, 1997, plaintiff continued to take time off from work on an intermittent basis. Specifically, plaintiff was absent from work on the following dates:

February 7, 1997 March 20, 1997 May 13, 1997

February 10, 1997 March 21, 1997 May 14, 1997

February 11, 1997 March 24, 1997 May 22, 1997

February 14, 1997 April 10, 1997 May 23, 1997

February 20, 1997 April 23, 1997 June 9, 1997

February 21, 1997 May 6, 1997

Comp. ¶ 14. Of those seventeen dates, eight fell on either a Monday or Friday.

During this period of time, plaintiff typically reported his absences to the voice mail of his immediate supervisor James Lupinetti, stating that he was not coming to work and that he was taking the absence as an "unpaid day". Aron Cert., Ex. V at 294:5–17. There were occasions, however, when plaintiff did not specify that he was taking the day off as an "unpaid day". Plaintiff alleges that James Lupinetti is a good friend of his who remained apprised of Mrs. Zawadowicz's condition, and therefore it was unnecessary to always report that he was taking an "unpaid day" pursuant to the FMLA. *Id.* at 294:13–295:11. Moreover, there was a period of time during which James Lupinetti was out on his own leave of absence. During this time, plaintiff left messages on the supervisor "call out" line. Plaintiff does not recall to which supervisor he reported. Plaintiff admits that during this time, he never provided a reason for missing work, nor did he indicate that the absence should be credited towards any FMLA leave. *Id.* at 295:12–296:5.

CVS alleges that given plaintiff's history of absenteeism, it was uncertain whether plaintiff's absences were due to Mrs. Zawadowicz's back injury.[2]

### F. Plaintiff's Termination

On May 15, 1997, CVS issued a written warning to plaintiff that he had "greatly exceeded the maximum amount of allowed hours in [his] 'bank'."[3] Aron Cert., Ex. R. On this date, John Colligan, Production Manager, provided plaintiff with a list of the dates of his absences since the beginning of the calendar year in January, 1997. Colligan advised plaintiff that a medical certification was needed for any FMLA-

---

**2.** Mrs. Zawadowicz, who was pregnant at the time of the accident, gave birth to a daughter on February 21, 1997. CVS claims that plaintiff never requested an LOA relating to this birth, and that plaintiff admitted at his deposition that some of his post-January absences were unrelated to his wife's medical condition. Aron Aff., Ex. V at 308–15.

**3.** The notice of warning provided:

In keeping with the L.D.C. Attendance Policy, I am providing you with this letter to inform you that you have greatly exceeded the maximum amount of allowed hours in your "bank."

Your attendance will continue to be monitored closely, *and you will be separated from CVS should you incur 8 more hours of absence from the above date through the end of the current calendar year.*

Please feel free to discuss any concerns with me. [A]ttached [is] a copy of the CVS "Complaint Resolution Process" and the "CVS Attendance Policy" for your reference. Aron Aff., Ex. R.

related absences which were to be credited to his attendance bank of hours. Aron Cert., Ex. R at 303:25–305:8.

On June 2, 1997, Colligan met with plaintiff a second time, cautioning him that failure to provide the medical certification by June 6, 1997 could result in his termination. *Id.* at 343:18–23. The next day, plaintiff contacted Chuck Martin, challenging the requirement for medical documentation. *Id.* at 344:10–15. Martin responded that CVS was entitled to periodic updates concerning plaintiff's leave and explained that the certification was necessary to determine which absences were FMLA-related and thus, needed to be restored to plaintiff's attendance bank. Martin then gave plaintiff until June 11, 1997 to provide the certification. *Id.* at 344:21–348:14.

On or around June 9, 1997, Robert J. Ponzio, D.O., Mrs. Zawadowicz's treating physician at the time,[4] faxed to Chuck Martin a handwritten letter stating, "Tammy Zawadowicz is currently under my care for severe low back pack pain." Aron Aff., Ex. U. That day, John Colligan left a message for plaintiff that Dr. Ponzio's letter was insufficient for FMLA certification purposes. Moreover, on June 11, 1997, Martin mailed to plaintiff a memorandum stating *inter alia* that the fax from Dr. Ponzio failed to provide the requested information. Aron Aff., Ex. T at unnumbered 1. Because Dr. Ponzio was unwilling to provide the requested information, Martin insisted that plaintiff either submit a certification justifying his FMLA absences or a letter by Dr. Ponzio stating that he would not provide the certification. *Id.* at 358:1–12. Martin extended the deadline for this submission to June 16, 1997. Aron Aff., Ex. T at unnumbered 1.

By June 16, 1997, plaintiff had provided neither the certification nor a letter by Dr. Ponzio. Consequently, Martin extended the certification deadline to June 20, 1997.

In a memorandum sent to plaintiff informing him of this extension, Martin explained in pertinent part:

> It is your responsibility to provide me with the information regarding your intermittent leave that was requested of you both on May 15, 1997 and in my memo to you dated June 4, 1997. You should provide the treating physician with all dates (up to and including 6/13/97) which you feel are FMLA-related. I am asking that the physician validate the fact that absences on these dates appear to be reasonable and consistent with the need for care, as outlined in your original Certification. All related dates must appear on the documentation.
>
> The requested information needs to be supplied to me by 3:30 p.m. on Friday 20, 1997. You will be unscheduled until such time as you provide this information and I have had sufficient time to review it and render a determination as to its effect on your bank of hours.
>
> If you do not provide this information to me by June 20, 1997 I will have no choice but to separate you from CVS for violation of the Attendance Policy.

Aron Cert., Ex. T at unnumbered 5.

Plaintiff did not submit the certification by June 20, 1997. Accordingly, CVS did not restore any of the absences to plaintiff's attendance bank, and plaintiff was discharged for violation of the Attendance Policy. *Id.* at unnumbered 6.

### G. *CVS Complaint Resolution Process*

CVS has an internal complaint resolution process which is outlined in The CVS Employee Handbook. Aron Aff., Ex. E. Basically, the process begins with an employee informing his immediate supervisor of a problem or question and if the employee is dissatisfied with the outcome, he

---

4. At the time of plaintiff's January 23, 1997 LOA application, his wife's treating physician was Dr. Josephson, who signed the corresponding certification. Sometime thereafter, Dr. Ponzio replaced Dr. Josephson as Mrs. Zawadowicz's physician.

may proceed through the CVS chain of command up to the Senior Vice president of Human Resources, "who will thoroughly review [the] issue and make a final decision on its resolution." *Id.* The stated purpose of the complaint resolution process is to "create a climate which promotes two-way communication, the respect of individuals, active participation and involvement in the business, adherence to high ethical standards, and a strong results orientation." *Id.* Plaintiff did not utilize this process to challenge his termination. Aron Aff., Ex. V at 64:8–65:22.

### H. *This Lawsuit and the Instant Motions*

On February 2, 1998, plaintiff filed the instant suit against CVS and XYZ Corp., a fictitious entity. The complaint, which plaintiff twice amended, alleges violations of the FMLA and the New Jersey FLA, unlawful retaliation, breach of implied contract, breach of good faith and fair dealing, and equitable estoppel. CVS answered the original and amended complaints.

Presently, CVS moves for summary judgment dismissing each and every count of plaintiff's seven-count complaint. Plaintiff has filed a brief in opposition to CVS's motion, and has cross-moved for partial summary judgment on his FMLA claims and state law claims alleging breach of contract, breach of duty of good faith and fair dealing, and equitable estoppel.

## II. *DISCUSSION*

### A. Jurisdiction

The Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

### B. Summary Judgment Standard

The standard for granting a motion for summary judgment is a stringent one, but it is not insurmountable. Fed.R.Civ.P. 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.,* 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey,* 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin,* 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

### C. Counts One and Six: FMLA

Congress enacted the FMLA "to balance the demands of the workplace with

the needs of families, ... [and] to entitle [eligible] employees to take reasonable leave for [certain] medical reasons." 29 U.S.C. § 2601. The FMLA permits eligible employees to take up to twelve weeks of leave during a twelve-month period for the birth or adoption of a child, to care for a spouse or other immediate relative who has a serious medical condition, or because of the employee's own serious health condition. 29 U.S.C. § 2612. When leave is taken for the serious health condition of a spouse, as is the case here, the employee may take intermittent or reduced (i.e., part-time) leave. 29 U.S.C. § 2612(b). Employees who take qualified leave are entitled to return to the same or equivalent position and benefits as they held before the leave. 29 U.S.C. § 2614. The FMLA declares it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the statute]." 29 U.S.C. § 2615(a)(1). The FMLA also prohibits "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the statute]." 29 U.S.C. § 2615(a)(2). Where an employer has vio-

lated the FMLA, the aggrieved employee is entitled to damages "equal to the amount of any wages, salary, employment benefits, or other compensation" which he was denied or lost as a result of the violation. 29 U.S.C. § 2617(a)(1)(B).

Plaintiff asserts two violations of the FMLA. In count one of the second amended complaint ("complaint"), plaintiff avers that CVS wrongfully terminated him for taking authorized leave under the FMLA. Comp. ¶ 21. Additionally, in count six plaintiff brings a claim for interference with the exercise of rights under § 501(a)(1) of the FMLA, 29 U.S.C. § 2615(a)(1). The gravamen of these claims is that CVS refused to grant plaintiff FMLA credit for absences allegedly taken to care for his wife, which absences occurred intermittently during the period of February to June, 1997.[5] CVS moves for summary judgment on the FMLA claims, arguing that plaintiff failed to comply with the FMLA's notice and certification requirements, and therefore was not entitled to FMLA leave for these absences.

### 1. Sufficiency of Notice

The FMLA and its regulations impose corresponding notice requirements on both

---

**5.** Plaintiff has cross-moved for summary judgment, seeking a determination as a matter of law that plaintiff (1) was entitled to FMLA credit for absences occurring between the period of January 1 and January 23, 1997 ("January absences") and (2) that CVS failed to restore credit to plaintiff's attendance bank for these absences, in violation of the FMLA. CVS concedes that plaintiff's January absences constituted approved FMLA leave. See Hildebrand Aff., Exs. L at 58:17–60–10; M at 54:3–55:18. Therefore, there is no genuine dispute that these absences qualified for FMLA credit, and thus were exempt from deduction from plaintiff's attendance bank.

A review of plaintiff's attendance record, however, reveals that excluding the January absences (equaling eighty total hours), plaintiff still exceeded his attendance bank. See Hildebrand Aff., Ex. B. From February, 1997 until June 9, 1997, plaintiff's final absence from work before his discharge, plaintiff consumed one-hundred forty-three hours of absentee time, thereby exceeding his attendance bank by thirty-one hours, or approximately

four days. See Id.; Aron Aff., Ex. X at 117:6–124:25. Therefore, assuming arguendo that CVS did not extend credit to plaintiff for the January absences, plaintiff still was in violation of the Attendance Policy and therefore subject to termination. Accordingly, plaintiff cannot demonstrate that he was denied any benefits guaranteed by the FMLA resulting from CVS's alleged failure to restore the January absences to his attendance bank. See Dodgens v. Kent Manufacturing Co., 955 F.Supp. 560, 564–65 (D.S.C.1997). Plaintiff's reliance on Viereck v. City of Gloucester City, 961 F.Supp. 703 (D.N.J.1997) is misplaced. The court in Viereck granted summary judgment on the issue of liability in favor of the employee where questions of fact remained as to the issues of damages. In contrast, it is undisputed that the plaintiff here suffered no damages from CVS's alleged technical violation pertaining to the January absences. Plaintiff's cross-motion for partial summary judgment on the FMLA claims therefore will be denied.

the employer and employee. The regulations require that covered employers post in conspicuous places on its premises a notice explaining the FMLA's provisions and the procedures for filing complaints of FMLA violations. 29 C.F.R. § 825.300(a). An employer who fails to comply with the posting requirement is estopped from denying an employee FMLA leave based on the employee's failure to supply advance notice of his need for leave. 29 C.F.R. § 825.300(b).[6]

In addition to the posting requirement, employers must include in all employment handbooks or manuals information concerning employee entitlements and obligations under the FMLA.[7] 29 C.F.R. § 825.301(a)(1). Additionally, once an employee provides notice of a need for FMLA leave, the employer has a duty to provide that employee with "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1).

With regard to the notice obligations of employees, such obligations depend on whether the employee's need for leave is foreseeable or unforeseeable. When the necessity for leave is foreseeable based on planned medical treatment, the Act requires that the employee:

(A) . . . make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider of the employee or [the employee's] [child], spouse, or parent . . ., as appropriate; and

(B) . . . provide the employer with [at least] 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2). Where it is not possible for an employee to give thirty days notice, the regulations define "as soon as practicable" as requiring "at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." 29 C.F.R. § 825.302(b).

Although the Act is silent as to an employee's notice requirements for unforeseeable leave, the regulations address this issue, providing:

(a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

(b) The employee should provide notice to the employer either in person or by telephone. . . . The employee need not expressly assert rights under the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional information through informal means. The employee . . . will be expected to provide more information when it can readily be ac-

---

6. The regulations further authorize a civil money penalty limited to $100 for each offense against an employer that willfully violates the posting requirement. 29 C.F.R. § 825.300(b).'

7. Where the employer does not provide handbooks or manuals, the employer must supply notice under subsection (b)(1)'s specific notice requirements discussed in the text below. 29 C.F.R. § 825.301(a)(2).

complished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303. With regard to intermittent leave, the regulations require that an employee provide notice only once, but "shall advise the employer as soon as practicable if dates of scheduled leave change or are extended or were initially unknown." 29 C.F.R. § 825.302(a).

CVS claims that plaintiff was terminated for excessive absenteeism in violation of the attendance policy. Specifically, defendant argues that plaintiff missed work a total of seventeen days during the period of February to June 1997 ("post-January absences"), which absences were unauthorized and therefore exceeded his attendance bank. However, plaintiff argues these absences consisted of FMLA leave authorized by CVS on January 23, 1997. It is undisputed that CVS, approved plaintiff's January 23, 1997 FMLA request ("January LOA"), thereby authorizing FMLA leave "beginning on intermittent and ... continu[ing] until approximately intermittent." Aron Aff., Ex. P. The parties, however, dispute whether the January LOA applied retroactively or prospectively.

CVS alleges that the January LOA retroactively approved plaintiff's absences occurring between January 1 and 23, 1997, which plaintiff had yet to designate as FMLA leave; therefore, plaintiff was required to provide new notice of a need for FMLA leave for his post-January absences, which CVS alleges plaintiff failed to do. Disagreeing, plaintiff contends that the January LOA authorized intermittent leave "for an indefinite period in the future, up to the 26–week limit stated in [CVS's] Employee Handbook," and thus CVS already had approved his post-January absences. Pl.'s Opp'n Br. at 4. Consequently, no additional notice for the post-January absences was required.

To buttress its argument, CVS asserts that approval of plaintiff's FMLA leave was based upon information supplied by Mrs. Zawadowicz in the medical certification, namely that the duration of her medical condition and corresponding period of plaintiff's leave was from "October 17, 1996 to present." CVS argues that "[b]y inserting the words 'to present' [Mrs. Zawadowicz] intended that plaintiff's leave 'would be through the date she filled out the form,' that date being January 23, 1997." Def.'s Supp. Br. at 10. Mrs. Zawadowicz's intention for the words "to present", however, is hardly clear from her deposition testimony.[8] Even assuming that she did intend "to present" to be synonymous with "January 23, 1997," plaintiff did not share his wife's understanding. Plaintiff testified at his deposition that he understood "to present" to encompass the indefinite period of time until his wife's condition improved so that she could return to work. Aron Aff., Ex. V at 266:13–25.

■ Evidence exists which supports plaintiff's interpretation. The January LOA authorized by Chuck Martin contains the following handwritten instruction at the bottom of the first page: "As discussed[,] Jeff will notify me personally or via phone mail (ext.202) if he will be absent due to [his] wife's health condition." Hildebrand Aff., Ex. B. Martin's instruction contains the terms "will notify," which

---

8. The relevant portions of Mrs. Zawadowicz's deposition testimony is as follows:

Q: Under 5A on the form it says, "State the approximate date the condition commenced and the probable duration of the condition," do you see that?
A: Yes.
Q: And what did you write down underneath that section?
A: "To present."
* * *

Q: -"October 17, 1996 to present"?
A: Yes.
Q: And what was "present"?
A: When I was writing this paper?
Q: Yes, what was the date of that, was that in January of 1997?
A: I don't think so. I don't know when exactly it was. It was whatever date I filled this paperwork out. [ ]

Aron Cert., Ex. W at 59:11–60:11.

is clearly stated in future tense. Moreover, the January LOA does not specify a beginning or ending date for plaintiff's leave, but approves leave "beginning on INTERMITTENT . . . and continu[ing] until approximately INTERMITTENT." *Id.* The Court therefore concludes that genuine issues of fact exist as to whether the January LOA authorized plaintiff's absences on a retroactive or prospective basis.

Assuming for purposes of this summary judgment motion that the January LOA applied retroactively to plaintiff's absences occurring before January 23, 1997, CVS still would not be entitled to summary judgment. As discussed, the FMLA and its regulations impose certain notice requirements on an employee depending on whether the need for leave is foreseeable or unforeseeable. At minimum, the employee must provide sufficient information to notify the employer that he needs FMLA leave. CVS argues that the content of plaintiff's messages—that he was not coming to work—was too vague and therefore insufficient to put it on notice that he was missing work for an FMLA reason, i.e., his wife's medical condition.

■ Generally, the sufficiency of notice is a matter for the jury. *See eg., Hopson v. Quitman Co. Hospital and Nursing Home, Inc.,* 126 F.3d 635, 640 (5th Cir. 1997). Plaintiff testified that he called in on the days he missed work. It is undisputed that plaintiff did not state the reason for his absences. Aron Aff., Ex. V at 296:1–5. Sufficient evidence exists, however, from which a jury reasonably could conclude that CVS knew that plaintiff's post-January absences were due to his wife's condition. For instance, plaintiff typically reported his absences to James Lupinetti, a good friend of his. According to plaintiff, Mr. Lupinetti remained apprised of his wife's medical condition and even referred her to a certain physician. *See* Aron Aff., Ex. V at 295:7–11. In addition, Chuck Martin requested that plaintiff "notify [him] personally or via Phone Mail (ext.202) if he will be absent due to [his] wife's health condition." Hildebrand Aff., Ex. B. At his deposition, Martin recalled that plaintiff indeed did telephone him on occasion when he missed work. Hildebrand Aff., Ex. K, 117:8–14. Although Martin could not recall whether plaintiff stated the reason for his absence, it was Martin's understanding that plaintiff would contact him only if he was missing work in order to care for his wife. *Id.* at 117:8–119–8. Therefore, issues of fact remain concerning whether plaintiff provided to CVS adequate notice that his postJanuary absences were FMLA-related.[9]

■ CVS also appears to challenge the timeliness of plaintiff's voice mail messages, which plaintiff left the day of each

9. CVS cites to *Holmes v. The Boeing Co.,* 1999 WL 9760 (10th Cir.1999) as authority for the grant of summary judgment based on insufficient notice under the FMLA. In *Holmes,* the Tenth Circuit affirmed the district court's grant of summary judgment where it was undisputed that plaintiff failed to comply with defendant's FMLA leave requirement that he "speak directly to his supervisor or his personnel representative" on the day that leave would be taken. *Id.* at *1. Unlike *Holmes,* the instant case involves a factual dispute concerning whether plaintiff complied with the notice requirement. Thus, *Holmes* is distinguishable. In addition, *Holmes* is an unpublished opinion, and therefore carries no precedential weight beyond the doctrines of collateral estoppel and res judicata. *See* U.S.Ct.App.10th Cir. Rule 36.3, 28 U.S.C.A.

Similarly, CVS's reliance upon *Satterfield v. Wal–Mart Stores, Inc.,* 135 F.3d 973 (5th Cir. 1998) and *Gay v. Gilman Paper Co.,* 125 F.3d 1432 (11th Cir.1997) also is misplaced. As discussed, there is evidence from which a jury could conclude that CVS was well apprised of Mrs. Zawadowicz's medical condition and had reason to believe that this condition was the reason for plaintiff's absences, especially in light of Martin's instruction that plaintiff call in when he was taking an FMLA absence. Thus, *Satterfield* is inapposite to this case. Moreover, there is no evidence in this case that plaintiff provided false information concerning the reasons for his absences as was the case in *Gay.*

absence and not in advance. Advance notice is only required, however, when the need for leave is foreseeable. For unforeseeable leave, notice must be given "as soon as practicable." Whether plaintiff's need for leave on each given date was foreseeable or unforeseeable is a matter to be determined by the jury. Accordingly, there is a genuine dispute concerning whether plaintiff provided adequate and timely notice that he was taking FMLA leave after January 23, 1997.[10] Therefore, CVS is not entitled to summary judgment on counts one and six based on its insufficiency of notice argument. The Court now will address CVS's alternative argument relating to plaintiff's failure to provide a physician's certification verifying that his post-January absences were FMLA-related.

#### 2. Medical Certification

Neither the FMLA nor the regulations require employees to substantiate the need for FMLA leave with a medical certification. The regulations, however, authorize employers to require such certification when the need for leave involves the serious health condition of the employee or a member of the employee's immediate fami-

ly. 29 C.F.R. § 825.305(a). Should an employer require medical certification, it must notify employees of this requirement:

> In most cases, the employer should request that an employee furnish certification from a health care provider at the time the employee gives notice of the need for leave or within two business days thereafter, or, in the case of unforeseen leave, within two business days after the leave commences.
> * * *
> At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency.

29 C.F.R. § 825.305(c), (d).

The regulations also set forth when an employer may demand subsequent recertifications of medical condition. Generally, an employer may request a recertification but "no more often than every 30 days." 29 C.F.R. § 825.308. In addition, when an

---

**10.** CVS argues that even if the January LOA authorized future absences, the dates of these absences were unknown at the time leave was granted, and thus plaintiff had an obligation to advise it "as soon as practicable" of his dates for leave. See 29 C.F.R. § 825.302(a) (providing that notice for intermittent leave must be given only once but if dates of leave were initially unknown, "employee shall advise ... employer [of dates] as soon as practicable"). Raising the same arguments discussed above, CVS claims that plaintiff's "call-in method" failed to meet the notice obligation under 29 C.F.R. § 825.302(a). In response, plaintiff argues that CVS's argument confuses FMLA *leave* with an FMLA qualifying *absence*. FMLA leave consists of a series of related, FMLA-qualifying absences. FMLA intermittent leave consists of a series of non-consecutive absences taken for the same medical reason. Because the January LOA related to intermittent leave, plaintiff argues that he was only required to provide notice once pursuant to 29 C.F.R. § 825.302(a). Plaintiff claims he provided this notice on

January 23, 1997, the date on which future leave allegedly was authorized.

The Court disagrees that CVS's argument confuses leave and notice. While plaintiff is correct that 29 C.F.R. § 825.302(a) requires notice for intermittent leave only once, the regulation assumes that the dates of the leave have been determined. Where the dates are unknown at the time the employee requests leave, the employee has a continuing obligation to provide his employer with such dates "as soon as practicable." *Id.* Because it is undisputed that the January LOA did not set forth the dates of leave, plaintiff had a duty to inform CVS that he was taking leave pursuant thereto. The Court, however, has determined that triable issues exist with respect to the sufficiency of plaintiff's notice. Therefore, assuming that the January LOA applied prospectively, which the Court has concluded is a matter to be determined by the fact finder, CVS would not be entitled to summary judgment based on its insufficiency of notice argument.

employee takes intermittent leave, and the original certification states a time frame for such leave, the employer cannot request a recertification before that minimum period expires. However, when the circumstances provided in the original certification have changed or the employer has reason to doubt the employee's proffered reason for the absence, an employer may request a recertification at that time. *Id.*

CVS argues that assuming the January LOA applied prospectively and therefore approved future absences, this approval was conditioned on plaintiff submitting a supplemental medical certification to substantiate that his absences indeed were FMLA related. Def.'s Supp. Br. at 21. On May 15, 1997, CVS requested that plaintiff provide a recertification verifying his absences since January 1997. By doing so, plaintiff argues that CVS did not seek this recertification in accordance with the regulations, and thus, is estopped from penalizing plaintiff for failing to provide the certification.

■ CVS's recertification argument is premised upon a finding that the January LOA applied prospectively to plaintiff's post-January absences, a question which the Court already has determined must go to the jury. Moreover, plaintiff has raised additional fact issues which defeat summary judgment. The January LOA states in pertinent part that "You will be required to furnish recertification relating to a serious health condition in the event you need an extension of your leave." Aron Aff., Ex. P. As discussed, the duration of this intermittent leave, and consequently plaintiff's need for an extension, is a question of fact. Moreover, because the Janu-

ary LOA did not expressly request a medical certification for future absences, a jury could find that CVS failed to sufficiently advise plaintiff of his obligations in violation of FMLA's notice requirements set forth in 29 C.F.R. § 825.301(b)(1) and (f).[11] Furthermore, because CVS did not request certification until May 15, 1997, a jury could find that CVS waived whatever entitlement it may have had to seek verification for these absences.

On the other hand, plaintiff requested and obtained several other FMLA leaves of absence prior to the January LOA. *See* Aron Aff., exs. M (FMLA request and approval dated May 5, 1996); N (Same dated September 10, 1996); O (Same dated October 17, 1996). A review of these documents demonstrate that plaintiff often retroactively submitted certifications to verify absences already taken. On one occasion, plaintiff furnished the certification weeks after the first day of his leave. *See* Aron Aff., Ex. For another FMLA leave, plaintiff did not supply the certification until months after the leave had ended. *See* Aron Aff., Ex. N. Therefore, a jury reasonably could find that based on these prior dealings, there was an understanding that plaintiff would provide the necessary certifications sometime after leave was taken.

To briefly summarize, the Court finds that there is a genuine fact dispute as to the following: (1) whether the January LOA authorized leave on a retroactive or prospective basis; (2) whether plaintiff provided sufficient notice to CVS that his post-January absences involved FMLA leave; and (3) whether plaintiff had a duty to provide a medical certification for the

---

**11.** Under subsection (b)(1), employers must provide an employee who has requested FMLA leave with written notice "detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." Subsection f of the regulations provide:

If an employer fails to provide notice in accordance with the provisions of this sec-

tion, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice.

29 C.F.R. § 825.301(b)(f). Unlike 29 C.F.R. § 825.300(b), the estoppel set forth in section 825.301(f) is not limited to the requirement of advance notice.

postJanuary absences.[12] Accordingly, summary judgment on counts one and six of the complaint will be denied.

### D. Count Two—New Jersey FLA

Marshaling the same arguments for summary judgment on the FMLA claims, CVS moves to dismiss count two of the complaint, which asserts a violation of the New Jersey FLA, N.J.S.A. 34:11B–1 et seq.

On May 4, 1989, four years before its federal counterpart, the New Jersey Legislature enacted the FLA "to promote the economic security of families by guaranteeing jobs to wage earners who choose to take a period of leave upon the birth [or adoption] of a child or serious health condition of a family member." N.J.S.A. § 34:11B–2. The FLA entitles employees to take up to twelve weeks family leave from employment during any twenty-four month period for the birth or adoption of a child or due to the serious health condition of a family member. N.J.S.A. § 34:11B–4. The FLA mirrors the FMLA as to the types of leave available to employees, such as paid or unpaid and block, intermittent or reduced leave. In addition, the FLA imposes certain notice requirements on both the employer and employee.

The FLA, however, does not provide much guidance as to employee's notice requirements, but merely states:

> In the case of a family member who has a serious health condition, the leave may be taken intermittently when medically necessary, if ... the employee provides the employer with prior notice of the leave in a manner which is reasonable and practicable ... and [ ] the employee makes a reasonable effort to schedule the leave so as not to disrupt unduly the operations of the employer.

N.J.S.A 34:11B–4(a). Thus, the FLA is silent as to an employee's notice obligations when the need for leave is unforeseeable. *See D'Alia v. Allied–Signal Corp.*, 260 N.J.Super. 1, 614 A.2d 1355, 1358 (App.Div.1992). Moreover, neither the FLA nor the corresponding regulations define the terms "reasonable and practicable." Although the FLA preceded the FMLA, the FMLA and its regulations have been deemed instructive as to the FLA's notice requirements. *See Barone v. Leukemia Society of America*, 42 F.Supp.2d 452, 458 (D.N.J.1998). With respect to the timeliness of employee's notice obligations under the FLA, the Court defines "reasonable and practicable" consistent with "as soon as practicable" under 29 C.F.R. § 825.302(b), which "ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." *Id.*

With regard to the adequacy of the notice's content under the FLA, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off [under the Act]." *D'Alia*, 260 N.J.Super. 1, 614 A.2d 1355 at 1359. The FLA, like the FMLA, does not impose rigid content requirements on the employee and "there are no magic words that must be used." *Id.*

As noted, the FLA closely mirrors the FMLA. The Court has determined that there are genuine issues of material fact to preclude summary judgment on plaintiff's FMLA claims. Accordingly, the same issues of fact likewise defeat summary judgment on count two of the complaint which alleges a violation of the FLA.

### E. Count Three—Unlawful Retaliation

In count three, plaintiff asserts an unlawful retaliation claim against CVS, averring that "[CVS's] decision to discharge Plaintiff was based, in determinative part,

---

**12.** Of course, these material issues consist of smaller, factual issues also which must be determined by a jury.

on [its] effort to retaliate against Plaintiff's wife for ... exercis[ing] ... her rights under the Worker's Compensation Act." Comp. ¶ 29. Seeking to dismiss this claim, CVS argues that plaintiff cannot state a cause of action for unlawful retaliation because the claim is predicated on conduct performed by plaintiff's wife and not by plaintiff himself.

■ Generally, in the absence of an employment contract, an employer may terminate an employee at any time, with or without cause. *See, e.g., Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505, 508–09 (1980). Where an employer discharges an at-will employee "contrary to a clear mandate of public policy," however, New Jersey law recognizes a cause of action for wrongful discharge against the employer. *Id.* at 512. "The sources of public policy include legislation, administrative rules, regulations or decisions, and judicial decisions." *Id.*

■ To establish a prima facie case of unlawful retaliation, plaintiff must show that: (1) he engaged in a protected activity known by the employer; and (2) he was discharged in retaliation for engaging in the protected activity. *See Craig v. Suburban Cablevision, Inc.,* 140 N.J. 623, 660 A.2d 505, 508 (1995); *Galante v. Sandoz, Inc.,* 192 N.J.Super. 403, 470 A.2d 45, 47 (L.Div.1983). In this case, plaintiff alleges that the protected activity involved supporting or encouraging his wife, also a CVS employee, to submit a claim for worker's compensation. New Jersey law is clear that filing a claim for worker's compensation qualifies as protected activity for unlawful retaliation purposes. *See Pierce,* 417 A.2d at 510 ("It is well established that an employee has a cause of action where he is discharged in retaliation for filing a worker's compensation claim.") (citations omitted).

■ Moreover, the New Jersey Supreme Court has conferred standing under the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1, et seq., to employees who alleged they were terminated for encouraging a co-employee to exercise her rights under the LAD. *See Craig,* 660 A.2d at 509. In reaching this conclusion, the supreme court noted, "[t]o deny standing to the co-workers would encourage employers to take reprisals against the friends, relatives, and colleagues of an employee who have asserted an LAD claim.... [W]e doubt that the Legislature would want us to bar the aggrieved co-workers from the courthouse by denying them standing to sue." *Id.* Although the *Craig* court resolved the issue of plaintiffs' standing in the context of the LAD, its holding effectively pronounced a new public policy that employers shall not retaliate against employees for encouraging a colleague to exercise certain rights. Here, both plaintiff and his wife were employed by CVS. Count Three avers that CVS discharged plaintiff in order to retaliate against plaintiff's wife for exercising rights under the Worker's Compensation Act. The Court finds that these allegations are sufficient to state a valid cause of action for unlawful retaliation.

Although the allegations in the complaint state a cause of action for unlawful retaliation, plaintiff has not created a genuine issue of material fact to survive CVS's motion for summary judgment. In his opposition brief, plaintiff neither presents a single argument nor any evidence to support a finding that CVS had retaliated or attempted to retaliate against Mrs. Zawadowicz for filing a claim for worker's compensation. Indeed, the record is devoid of any evidence regarding CVS's treatment of Mrs. Zawadowicz after the October 1996 job-related incident. Rather, the record and the statement of material facts supplied by the parties indicate that the central issue in this case concerns whether plaintiff's post-January absences were authorized under the FMLA, the FLA, and/or CVS's employment policies and practices. Plaintiff has presented no evidence that CVS discriminated or retaliated against his wife or indicating a causal

connection between this alleged discrimination and his own discharge. Consequently, plaintiff has failed to adduce any evidence that he was discharged for "aiding or encouraging" his wife to file a worker's compensation claim or because CVS "perceived [him] as having supported [his wife]." *Craig*, 660 A.2d at 508. Although genuine issues exist as to whether CVS terminated plaintiff in violation of the FMLA or the FLA, the evidence of record is insufficient for a reasonable jury to find that plaintiff's discharge was motivated by an effort to retaliate against his wife.[13] Therefore, summary judgment will be entered in favor of CVS, dismissing plaintiff's state law claim for unlawful retaliation.

### C. Counts Four and Five—Breach of Implied Contract and Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges in counts four and five, respectively, that CVS terminated his employment in breach of the CVS Attendance Policy ("Policy") and in breach of the implied duty of good faith and fair dealing ("collectively breach of contract claims"). Both parties move for summary judgment on the breach of contract claims. Specifically, defendant argues that (1) the Policy did not create an implied employment contract because the Policy contained an effective disclaimer; and (2) even if the Policy is an enforceable contract, plaintiff did not comply with CVS's internal complaint resolution procedure detailed in the CVS Employee Handbook, and thus is barred from raising the instant claims. Disagreeing with these allegations, plaintiff cross-moves for summary judgment on the breach of contract claims.

■ New Jersey recognizes a cause of action against employers for violating express or implied promises in an employee handbook or manual. *See Woolley v. Hoffmann–La Roche*, 99 N.J. 284, 491 A.2d 1257, 1258 (1985), *modified on other grounds*, 101 N.J. 10, 499 A.2d 515 (1985). In the seminal *Woolley* decision, the Supreme Court of New Jersey held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause [and in accordance with specified procedure], may be enforceable against an employer even when the employment ... would otherwise be terminable at will." *Id.* The test for determining whether a policy created an implied contract "turns on the reasonable expectations of employees." *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 643 A.2d 546, 550 (1994). To that end, a court may consider factors such as "the definiteness and comprehensiveness of the termination policy and the context of the [policy's] preparation and distribution." *Id.* Thus, where a policy is widely disseminated, applies to employees at every level, is definite and comprehensive in its terms, and contains no clear and prominent disclaimer, the policy will create an enforceable contract.

In this case, plaintiff alleges that the CVS Attendance Policy ("Policy") effective January 1, 1996 created an implied promise that CVS would follow the progressive discipline procedures set forth therein prior to terminating an employee for absenteeism.[14] The progressive disci-

---

13. Viewing the record in a light most favorable to plaintiff, a jury reasonably could conclude that plaintiff was terminated for missing work in order to care for his wife. This evidence may demonstrate a violation of the FMLA or FLA. However, such evidence without more does not suggest any retaliation by CVS related to Mrs. Zawadowicz's application for worker's compensation, plaintiff's only asserted basis for his unlawful retaliation claim.

14. While the Supreme Court of New Jersey has declined to comment on the parameters of *Woolley's* application, the New Jersey Appellate Division has extended *Woolley* to oral assertions, holding that such assertions may contractually bind the employer. *See Gilbert v. Durand Glass Manuf. Co., Inc.*, 258 N.J.Super. 320, 609 A.2d 517, 521 (App.Div.1992); *Shebar v. Sanyo Business Systems Corp.*, 218 N.J.Super. 111, 526 A.2d 1144, 1148–49 (App. Div.1987) ("The difference between a manual

pline procedures are outlined in the Policy as follows:

Corrective counseling regarding attendance will be administered according to the following guidelines:

- *Verbal Advisory:* To advise an employee that they have utilized more than one-half of their *total eligible bank of hours.*
- *1st Written Counselling* [sic]: To advise an employee that *all PAID and UNPAID HOURS* in their bank have been utilized.
- *2nd Written Counselling* [sic]: To advise an employee that they have exceeded their total available bank by *8* hours.
- *Separation:* Employee has exceeded their total available bank by *16* hours.

Aron Aff., Ex. K ¶ 5.

It is undisputed that CVS did not strictly adhere to the above procedures before discharging plaintiff. Plaintiff received no verbal warning that he had used more than half of his allotted time. Nor did plaintiff receive a first written warning that he had exhausted his bank of hours for 1997. Rather, on May 15, 1997 CVS warned plaintiff in writing for the first time that he had exceeded his available hours and would be terminated if he missed eight hours, or one more day, of work. Def.'s Supp. Br. at 12; Aron Aff. Ex. R. Thereafter, on June 4, 1997, CVS requested in writing that plaintiff submit by June 11, 1997 a medical certification verifying any absences entitled to FMLA credit or he would be terminated for excessive absenteeism. Aron Aff., Ex. S. Because plaintiff failed to supply the requested certification by the June 11 deadline, CVS extended this deadline twice, issuing a final deadline of June 20, 1997. Plaintiff did not present the certification on June 20, 1997 and was discharged on this date.

Moving for summary judgment on the breach of contract claims, CVS argues that unlike the manual in *Woolley,* the Policy contained an effective disclaimer and thus did not constitute an enforceable contract. In *Nicosia v. Wakefern Food Corp.,* 136 N.J. 401, 643 A.2d 554 (1994), the New Jersey Supreme Court elucidated upon *Woolley's* standard for effective disclaimers. To be effective, a disclaimer must contain an "appropriate statement," which is expressed in clear, straightforward terms, and not "confusing legalese," "such that no one could reasonably have thought [the policy] was intended to create legally binding obligations." *Id.* at 560 (citations omitted). Second, the disclaimer must be "prominent," or sufficiently conspicuous to attract the reader's attention. The "prominence" requirement may be accomplished by setting off the disclaimer with different type, such as bold or italics, or by a different color or border. *Id.* at 561 (citations omitted). The conspicuousness of a disclaimer is a matter of law. *Id.* Further, "When the facts surrounding the content and placement of a disclaimer are themselves clear and uncontroverted, ... the effectiveness of the disclaimer can be resolved by the court as a question of law." *Id.*

■ In this case, the Court finds that the disclaimer in the Policy failed to be sufficiently prominent so as to attract the reader's attention. The disclaimer appears in the last sentence of the Policy's introductory paragraph, which reads as follows:

Good attendance and punctuality are essential to the overall success of our operation. As a CVS employee, you have an obligation to report to work on time, as scheduled, and to work your scheduled hours. There may be occasions when, due to a planned event or un-

or handbook policy and a policy otherwise expressed presents ... an issue of proof rather than of substance."). Based on these decisions, the Court concludes that although the

written policy in this case was not disseminated in an employee handbook or manual, *Woolley* applies.

planned illness, an employee may wish to be absent from work for all or part of his/her scheduled day. The following guidelines are meant to provide each employee with the necessary flexibility to manage their personal needs, while at the same time providing *corrective* counselling [sic] guidelines to be followed in the case of undesirable attendance by an employee. It is hoped that these guidelines will enable each employee to take accountability for their attendance. These guidelines do not create any contract or other rights (expressed or implied) with any employee.

Aron Aff., Ex. K (emphasis in original). The disclaimer is not presented in different type, highlighted, underlined, or set off or apart in any other way from the general text of the introductory paragraph. Therefore, the Court finds that this disclaimer as a matter of law is insufficient to survive *Nicosia's* prominence scrutiny.

In addition to the Policy disclaimer, CVS alleges that plaintiff acknowledged in his employment application, Aron Aff., Ex. B, and in the Acknowledgment to the CVS Employee Handbook ("Acknowledgment"), Aron Aff. Ex. D, "that he had no employment contract and could be terminated without notice." Def.'s Supp. Br. at 28. The Court finds that neither of these documents contained "appropriate statements" that informed plaintiff in "clear, straightforward terms" that he could be terminated at any time.

■ The first document, plaintiff's employment application, states in pertinent part:

> I understand that the terms and conditions of my employment may be improved, or otherwise changed, form time to time by CVS/PEOPLES without prior notice and that no individual contract of employment can be established at any time between any employee of CVS/PEOPLES and the Company other than by an express written agreement signed by an officer of CVS/PEOPLES.

Aron Aff., Ex. B. While this statement indicates that employment "may be improved, or otherwise changed," without prior notice, it is silent as to *termination without prior notification (emphasis added).* Moreover, the language that "no individual contract of employment can be established at any time . . . other than by an express written agreement" is insufficiently clear as to whether CVS may discharge the plaintiff at any time, with or without cause, with or without notice. The Court therefore concludes that the disclaimer in plaintiff's employment application is ineffective as a matter of law. *See Woolley,* 491 A.2d at 1257 (disclaimer is to be construed "in accordance with the reasonable expectations of the employees"); *Sellitto v. Litton Systems, Inc.* 881 F.Supp. 932, 938 (D.N.J.1994) (finding that statement in initial letter offering employment failed to disclaim implied promises in Handbook or Manual, and therefore was ineffective as matter of law).

Similarly, the Acknowledgment fails *Nicosia* scrutiny as a matter of law. The Acknowledgment provides in relevant part:

> I understand that neither this handbook nor any other communication by a management representative, whether oral or written, is intended in any way to create a contract of employment. Since employment is voluntarily entered into, I am free to resign at any time. Similarly, the company may terminate the employment relationship whenever it believes it is appropriate.

Aron Aff., Ex. D. Like the disclaimer in the employment application, the statement above does not state in straight-forward terms that CVS may discharge plaintiff without prior notice. While the Acknowledgment expressly states that plaintiff may "resign at any time," it provides that CVS may terminate plaintiff "whenever it believes it is appropriate." Because the term "appropriate" was used instead of the phrase, "at any time," a reasonable employee could have believed that CVS's right to terminate was limited to matters

deemed appropriate as set forth in the manual and other policies circulated throughout the company. Thus, the Court finds that the Acknowledgment fails to meet *Nicosia's* "appropriate statement" requirements.[15] *See Nicosia*, 643 A.2d at 560 ("An effective disclaimer must be expressed in language 'such that no one could reasonably have thought [the policy] was intended to create legally binding obligations.' "); *Sellitto*, 881 F.Supp. 932 at 939–40.

For the reasons discussed above, CVS has failed to point to effective disclaimers precluding the Policy from having any binding contractual effect. The Court now will address CVS's alternative argument for summary judgment on the breach of contract claims.

Next, CVS argues that even if a jury finds the existence of an implied contract, plaintiff was required to follow CVS's Complaint Resolution Process outlined in the Employee Handbook, which he failed to do, and thus, his contract claims are barred. Section 11 of the Handbook outlines the chain of command by which employees are to seek resolution of a question or problem, beginning with the employee's immediate supervisor and continuing up to the Senior Vice President of Human Resources. The Handbook provides:

> We will treat your questions, concerns, and complaints seriously and will resolve them in a timely and appropriate manner. You, on the other hand, have a responsibility to let us know when you have a question of problem. Generally, the best thing to do is to discuss your issue with your immediate supervisor

first. This supports the team approach and builds strong working relationships. However, you do have other options available [such as going up through the chain of command outlined below].

Aron Aff., Ex. E at 41.

■ There are no New Jersey cases addressing whether an employee's breach of contract claims based upon an employee handbook are barred when the employee failed to exhaust mandatory grievance procedures set forth in the handbook. Analogizing to New Jersey law in the context of collective bargaining agreements, a court in this district has answered this question in the affirmative. *See Fregara v. Jet Aviation Business Jets*, 764 F.Supp. 940 (D.N.J.1991). In *Fregara,*, the court reasoned:

> The sole basis for the plaintiff's cause of action is the employee handbook itself. [ ] If the plaintiff seeks to rely on provisions in the employee handbook, as the source of an implied contract of employment, then he must accept that agreement as a whole with its attendant responsibilities. Plaintiff cannot seek to enforce his rights under the agreement while avoiding his responsibilities. In short, plaintiff must accept his obligations along with his rights as in any agreement.

*Id.* at 951. Where a handbook or manual provides for mandatory internal grievance procedures before resorting to the courts, and the plaintiff neglects to utilize such procedures, plaintiff's breach of contract claims based on the handbook are barred. *Id.*

■ Here, plaintiff argues that CVS's Complaint Resolution Process was an op-

---

**15.** CVS also appears to argue that plaintiff conceded at his deposition that his employment was at will and that he could be terminated at any time without notice. Def.'s Supp. Br. at 28–29; Def.'s Reply Br. at 15. However, CVS has failed to provide the Court with the relevant portions of plaintiff's deposition testimony. Based on CVS's representation of this deposition testimony in its supporting memorandum, Supp. Br. at 28–29, which the Court will assume is accurate, CVS still cannot prevail. Apparently, defense counsel asked plaintiff whether he "understood [from the Acknowledgment] that the company may terminate [him] whenever it believes is *appropriate*," to which plaintiff responded, "correct." *Id.* at 29 (emphasis added). In essence, defense counsel's question to plaintiff parrots the statement contained in the Acknowledgment, without clarification, which the Court has concluded is ineffective. Thus, CVS has not presented evidence that plaintiff understood that he could be terminated at any time, without prior notice.

tional mechanism by which employees could contact various supervisors to discuss employment questions or concerns, and thus he was not required to exhaust this optional remedy before filing the present action. Whether CVS's Complaint Resolution Process is mandatory or permissive is a matter for the jury, as the language set forth in the Handbook is all but clear. While the Handbook provides that employees "have a responsibility to let us know when [they] have a question or problem," it also states that employees "may" present their questions or problems to supervisors above their immediate supervisor. Morever, unlike the detailed

grievance procedures in *Fregara*,[16] the resolution process in this case does not expressly require employees to utilize the process to challenge or appeal a discharge. Thus, a jury reasonably could conclude that the CVS resolution procedure was in effect only during one's employment.[17] Because CVS faults plaintiff for failing to use the internal complaint process to appeal his termination,[18] a jury could find that as plaintiff was no longer a CVS employee, the provisions of the Handbook, namely the resolution process, no longer served to contractually bind the plaintiff.[19]

To summarize, there remain genuine issues of fact concerning the existence of an

16. In addition to relating to general work-related concerns, the grievance procedures in *Fregara* applied to matters of discipline and discharge. Pursuant to those procedures, a terminated employee had three business days to appeal his discharge to his immediate supervisor or the department head. The employee then has a right to a further appeal to a Board of Adjustment, which is a four-member committee which members are selected by the President of the company and non-supervisory personnel. Should there be a deadlock, an impartial referee is appointed to serve as a tie breaker. The decision of the Board is final. 764 F.Supp. at 950.

17. This interpretation is supported by a goal of the resolution process, which is to "support[] the team approach and build[] strong working relationships." Aron. Aff., Ex. E at 41.

18. At plaintiff's deposition, CVS inquired about his failure to utilize the complaint resolution process to challenge his termination before filing the instant action:

Q: If you knew that you had a right to grieve your complaint up the chain of command as you put it, how come you didn't do that before you sued?
* * *
A: Well, I went to the Labor Board.
Q: And in your mind that was sufficient to do that?
* * *
A: Yes.
Q: That's all you thought you had to do?
* * *
A: Yes.
Q: Did you think Mr. Martin was being unfair?
A: Yes.

Q: Then why didn't you give somebody above Mr. Martin an opportunity to review his actions before you filed a lawsuit?
* * *
A: Before I filed the lawsuit?
Q: Yes.
A: I was fired. I was terminated. They sent me to the unemployment line.
Q: And?
* * *
A: I didn't think there was any—I was gone. I was terminated. I didn't think I had any other route to go. CVS fired me. I didn't leave. I wanted my job.
Q: .... Because you were fired you didn't think you could grieve your termination beyond Mr. Martin and you did nothing else?
A: Correct.
Aron Aff., Ex. V at 64:8–66:2.

19. Alternatively, plaintiff argues that the Complaint Resolution Process is not contained in the Policy, on which plaintiff's breach of contract claims are based, but instead is outlined in the Handbook. Thus, plaintiff asserts that because he is not alleging breach of the Handbook, *Fregara* does not apply. Whether the Handbook, like the Policy, created an enforceable contract, binding both CVS and the plaintiff is a matter to be decided by the fact finder. While plaintiff may choose to prove that only the Policy created an implied contract, should CVS desire, it may present evidence that the Handbook likewise constituted a binding agreement. Should CVS choose this course of action, the jury will have to determine whether the evidence satisfies the *Woolley* factors for either the Policy or Handbook, or both.

implied contract and the effect of CVS's Complaint Resolution Process. As these were the only grounds raised by CVS for summary judgment on the contract claims, CVS's motion will be denied. For the same reasons, plaintiff's cross-motion for summary judgment likewise will be denied.

### G. Count Seven—Equitable Estoppel

In count seven, plaintiff asserts a claim for equitable estoppel based on *inter alia* CVS's failure to comply with the progressive discipline procedures set forth in the Policy. Both CVS and plaintiff move for summary judgment on this claim. As discussed below, the Court will deny both motions.

█ To establish a claim for equitable estoppel, the party asserting the claim must show (1) a representation or misrepresentation; (2) made with the knowledge by the representor that it would induce action; and (3) substantial, detrimental reliance on the representation by the claimant. *Barone v. Leukemia Society of America*, 42 F.Supp.2d 452, 464 (D.N.J. 1998). This equitable doctrine is " 'designed to prevent a party's disavowal of previous conduct if such repudiation would not be responsible to the demands of justice and good conscience.' " *Heuer v. Heuer*, 152 N.J. 226, 704 A.2d 913, 918 (1998) (quotation omitted). The doctrine is applied " 'only in very compelling circumstances ... where the interests of justice, morality and common fairness clearly dictate that course.' " *Palatine I v. Planning Bd. of the Township of Montville*, 133 N.J. 546, 628 A.2d 321, 328 (1993) (quotation omitted).

In this case, plaintiff alleges that CVS represented in the Policy that employees would receive progressive warnings concerning attendance and absenteeism which were to be issued at specified intervals. The Court, however, has already determined that factual issues exist concerning the effect of the Policy's progressive warning procedures. Moreover, there are triable issues as to whether plaintiff detri-

mentally relied on the warning procedures. Plaintiff certifies that had CVS notified him at the point at which he had utilized 50% of his eligible leave, he could have taken preventative measures to ensure that he did not exceed his allotted hours. Pl.'s Reply Br., Ex. A at ¶ 2. In addition, plaintiff argues that his failure to obtain the requested medical certification for his FMLA-related absences was due in large part to CVS's failure to request the certifications until May 15, 1997, several months after some of the absences in issue. Plaintiff alleges that "[b]y that time, [his] insurance changed, [and therefore] Dr. Josephson (who signed the initial certifications) was no longer treating Mrs. Zawadowicz, and Dr. Ponzio refused to provide retroactive certification covering time periods when he was not involved." Pl.'s Reply Br. at 14.

█ There is evidence, however, that plaintiff had a history of absenteeism. *See* Aron Aff., Exs. G, H, I, J, K. CVS responded to this problem on several occasions in 1994 and 1995. In particular, on April 24, 1995, CVS notified plaintiff in writing that he needed to correct his "unacceptable attendance pattern." Ex. H. Thereafter, on November 10, 1995 CVS issued a written notice to plaintiff that he had "exceeded the maximum amount of allowed hours in [his] bank." Ex. I. CVS volunteered to restore eight hours to plaintiff's attendance bank but cautioned that should he exceed those hours, he could be terminated. *Id.* Notwithstanding this warning, plaintiff continued to miss work, again exceeding his eligible hours. On December 5, 1995, plaintiff received a third written notice stating that, despite prior warnings, he had exceeded his hours. Ex. J. The notice also informed that CVS would add a final eight hours to plaintiff's attendance bank, and that plaintiff's attendance "[would] be monitored closely." *Id.* Thus, the fact finder reasonably could find that had CVS provided the requisite warnings, plaintiff nonetheless would have

disregarded them.[20] As genuine issues of fact remain, the Court cannot determine at this time whether the doctrine of equitable estoppel applies to preclude CVS's termination of plaintiff. *See Davin, L.L.C. v. Daham,* 329 N.J.Super. 54, 746 A.2d 1034, 1041 (App.Div.2000). Accordingly, neither the defendant nor the plaintiff is entitled to summary judgment on plaintiff's equitable estoppel claim.

### H. Damages

CVS next argues that as a matter of latter plaintiff is not entitled to liquidated damages for his FLMA related claims (counts one and six). Under the FMLA, an aggrieved employee is entitled to damages equaling "the amount of any wages, salary, employment benefits, or other compensation denied or lost ... by reason of the [employer's] violation," 29 U.S.C. § 2617(a)(1)(A)(i), plus liquidated damages equal to the amount awarded pursuant to § 2617(a)(1)(A)(i), unless the Court finds that the employer acted in good faith and had reason to believe that its conduct was not in violation of the Act. 29 U.S.C. § 2617(a)(1)(A)(iii). The Court already has found triable issues concerning whether CVS terminated plaintiff in violation of the FMLA. Similarly, the Court cannot determine from the present record whether CVS terminated plaintiff in good faith. CVS's motion to strike plaintiff's demand for liquidated damages under the FMLA is premature and therefore will be denied.

Next, CVS moves to strike plaintiff's demand for damages for "psychological, physical, [and] emotional distress" set forth in counts one through six of the complaint.[21] In addition, CVS moves to dismiss plaintiff's request for punitive damages for counts one, two, and three. *See* Comp. at ¶¶ 24(e), 27(e), 30(e).

Plaintiff concedes that neither punitive damages nor damages for physical and emotional distress are available under the FMLA. Pl's Opp'n. Br. at 36. Case law further supports this position. *See Lloyd v. Wyoming Valley Health Care System, Inc.,* 994 F.Supp. 288 (M.D.Pa. 1998) ("FMLA does not provide for emotion distress damages."); *Settle v. S.W. Rodgers, Co., Inc.,* 998 F.Supp. 657, 666 (E.D.Va.1998) (punitive damages and damages for emotional distress unavailable under FMLA). The Court will strike plaintiff's demand for non-economic compensatory and punitive damages set forth in counts one and six relating to his FMLA claims.[22]

Opposing CVS's motion as to count two, plaintiff argues that compensatory and punitive damages are available under the FLA, which CVS does not refute. As the Court agrees, *see* N.J.S.A. 34:11B–11 (allowing compensatory and punitive damages), CVS's motion pertaining to plaintiff's FLA claim will be denied.

Lastly, the Court will grant CVS's motion with respect to counts four (breach of implied contract) and five (breach of good faith and fair dealing). Under New Jersey law, a plaintiff may recover for emotional distress damages resulting from

---

20. Moreover, the record does not indicate that plaintiff ever received an oral warning once he utilized half of his eligible time-off. Further, plaintiff received attendance warnings after he had exceeded his allotted hours under the Policy. *See* Aron Aff., Exs. I, J. Therefore, a reasonable jury could find that based on this prior course of dealing, plaintiff's reliance on the progressive discipline procedures was neither justified nor reasonable. *See Palatine I,* 628 A.2d at 330 ("[O]nly justified and reasonable reliance warrant the application of equitable estoppel").

21. Each count seeks damages including "[s]uch sums as will adequately compensate Plaintiff for defamation of his profession standing, mental anguish, humiliation, emotional distress, physical pain and illness and other losses caused by his discharge." Compl. ¶¶ 24(c), 27(c), 30(c), 34(c), 38(c), 42(c).

22. Because summary judgment will be entered in favor of CVS on count three (unlawful retaliation), the Court need not address CVS's motion to limit plaintiff's demand for damages relating to this count.

a breach of contract where the breach was "both intentional and outrageous and proximately cause[d] severe, foreseeable emotional distress." *See, e.g., Picogna v. Bd. of Education,* 143 N.J. 391, 671 A.2d 1035, 1037 (1996); *Buckley v. Trenton Saving Fund Soc'y,* 111 N.J. 355, 544 A.2d 857, 862 (1988). In his opposition brief, plaintiff offers no response to CVS's motion relating to the breach of contract claims. Plaintiff has presented no evidence from which the Court could find that he suffered "severe, foreseeable emotional distress" as a result of the breach. *See Buckley,* 544 A.2d at 864 ("[T]he court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved.") Therefore, CVS's motion to strike portions of the damages claim for counts four and five will be granted.

## III. CONCLUSION

For the reasons stated herein, CVS's motion for summary judgment will be granted in part and denied in part. Additionally, plaintiff's cross-motion for partial summary judgment will be denied. The Court will enter an appropriate order.